# EXHIBIT 1

*Execution Version*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAUN ROBERTS and KEN SHEPPARD, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN EHRLICH, GERARD HANSHE, DAVID BROSGOL, JANICE BARRILLEAUX, PHILIP EYTAN, JARRETT LILIEN, RYAN WHOOLEY, LEWIS BATEMAN, DAVID BRILL, JON BROSNAHAN, DAN COSTANTINO, MARSHALL JENSEN, and EVAN PSAROPOULOS, and BRIAN BROOKS, <br><br> Defendants. | Case No. 1:22-cv-09590-PKC <br><br> Assigned Judge: Hon. P. Kevin Castel |

## STIPULATION AND AGREEMENT OF SETTLEMENT AND RELEASE

This Stipulation and Agreement of Settlement and Release, dated April 3, 2024 (including any subsequent amendments thereto, the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiffs Johnny Johnson, Eirian Johnson, and Ezra Boekweg ("Lead Plaintiffs"), along with additional named plaintiffs Shaun Roberts, Ken Sheppard, and Randy Roberts (together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class (defined below), by and through Lead Counsel (defined below); and (ii) Stephen Ehrlich ("Ehrlich") and Evan Psaropoulos ("Psaropoulos") (collectively, the "Settling Defendants"), by and through Settling Defendants' Counsel. Plaintiffs and Settling Defendants are referred to herein as the "Settling Parties." The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

WHEREAS, Plaintiffs, on behalf of themselves and others similarly situated, filed the above-captioned action (the "Action") as a putative class action in the United States District Court for the Southern District of New York ("the Court") against the Settling Defendants and other now-dismissed defendants.

WHEREAS, Settling Defendants deny all allegations of wrongdoing and have asserted defenses to Plaintiffs' claims in the Action.

WHEREAS, on or about June 23, 2023, Paul R. Hage, in his capacity as the Plan Administrator (the "Plan Administrator") of the Voyager Wind-Down Debtor (the "Wind-Down

*Execution Version*

Debtor") under the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed in *In re Voyager Digital Holdings, Inc.* [Index No. 22-10943 (Bankr. S.D.N.Y.), Doc. No. 1166-1] (as amended, modified, or supplemented from time to time, the "Plan Document"), the *Amended Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [*id*. Doc. No. 1159], and the Plan Administrator Agreement [*id* Doc. No. 1323] (collectively, the "Voyager Plan") provided Ehrlich and Psaropoulos with a draft complaint that he intended to file against them alleging breach of their fiduciary duties of care and good faith in connection with Voyager's loans to Three Arrows Capital Pte. Ltd., with a copy to the Insurers (defined below) (the "3AC-Related Claim"). Ehrlich and Psaropoulos deny liability in connection with the 3AC-Related Claim.

WHEREAS, pursuant to that certain "D&O Settlement" included in the Voyager Plan, although the Plan Administrator alleged at least $650 million in damages in connection with the 3AC-Related Claim, the Plan Administrator's potential recovery on the 3AC-Related Claim was limited to the amounts available under the Voyager D&O Policies (as defined below).

WHEREAS, the Plan Administrator also provided XL Specialty Insurance Company ("XL") with a draft complaint that he intended to file against it to avoid and recover, among other things, as an alleged fraudulent conveyance the $15.6 million in premium payments that Voyager paid to XL shortly before Voyager's bankruptcy filing (the "XL Fraudulent Conveyance Claims").

WHEREAS, the Plan Administrator's claims against XL threatened to further reduce the insurance available to settle or otherwise resolve this Action.

WHEREAS, even if the Plan Administrator were unsuccessful on the XL Fraudulent Conveyance Claims, the limits of the Voyager D&O Policies are inadequate to resolve the claims as asserted by the Plan Administrator and the Plaintiffs against Ehrlich and Psaropoulos.

WHEREAS, following protracted good faith, arm's length mediation efforts, conducted by David M. Murphy, Esq. of Phillips ADR Enterprises ("Murphy" or the "Mediator"), Plaintiffs and Settling Defendants (collectively, the "Settling Parties" or the "Parties"), the Plan Administrator and the Settling Defendants' insurers—XL; Euclid Financial Institution Underwriters LLC ("Euclid"); Relm Insurance Ltd. ("Relm," and together with Euclid and XL, the "Insurers")—by and through their respective counsel, have reached a global agreement for the settlement of the Plan Administrator's 3AC-Related Claim and XL Fraudulent Conveyance Claims as well as the settlement and dismissal with prejudice of the Action, which is memorialized in the Master Settlement Agreement (defined below).

WHEREAS, notwithstanding their belief that the claims asserted in the Action have merit based on their extensive investigations, Plaintiffs and their counsel, Scott+Scott and Taylor-Copeland Law ("Lead Counsel"), recognize and acknowledge that prosecuting the Action against Settling Defendants through the pending motion to dismiss, class certification, summary judgment, trial, post-trial motions, and appeals would involve substantial expense, and likely years of further litigation; that even if they were to eventually prevail in full on their claims, there was no assurance

that they would be able to collect on any judgment they might obtain against Settling Defendants; and that accordingly, they believe that the Settlement (defined below) set forth in this Stipulation confers substantial benefits upon the Class in light of the risks of continued litigation and that it is fair, reasonable and adequate, and is in the best interests of the Class.

WHEREAS, despite maintaining that they are not liable for the claims asserted herein and having meritorious defenses thereto, Settling Defendants have determined to enter into this Settlement, among other reasons, to avoid further expense, and the burden of protracted litigation, to avoid the distraction and diversion of their time and resources, to avoid the risks of litigation, and to obtain a full release of all claims and potential claims from the Class Members (defined below).

NOW, THEREFORE, in consideration of the foregoing promises, and for good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Settling Parties agree as follows:

1.    <u>The Action</u>

On July 5, 2022, Voyager Digital Holdings Inc., Voyager Digital LLC, and Voyager Digital Ltd. (collectively, "Voyager") each filed petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York, creating case numbers 22-10945, 22-10943, and 22-10944, respectively, jointly administered under case number 22-10943 (the "Bankruptcy Case").

On November 9, 2022, Plaintiffs Shaun Roberts and Ken Sheppard filed a putative class action complaint in the United States District Court for the Southern District of New York against Ehrlich, as well as other former officers/directors of Voyager: Janice Barrilleaux, Brian Brooks, David Brosgol, Philip Eytan, Gerard Hanshe, and Jarrett Lilien (collectively, the "Original Defendants"). [ECF No. 1]. The lawsuit was brought on behalf of persons and entities that purchased Voyager Earn Accounts ("Earn Accounts") and the VGX Tokens (defined below) between January 1, 2020 and November 9, 2022, inclusive, and alleged violations of Sections 5, 12(a)(1), and 15 of the Securities Act of 1933, Sections 25110, 25503, and 25504 of the California Corporations Code, and Sections 49:3-60 and 49:3-71-D of the New Jersey Uniform Securities Law, as well as common law claims for unjust enrichment/restitution. On April 19, 2023, Plaintiffs Johnny Johnson, Eiran Johnson, and Ezra Boekweg were appointed as Co-Lead Plaintiffs and their counsel, Scott+Scott and Taylor-Copeland Law, were appointed as Lead Counsel. [ECF No. 49].

On May 26, 2023, Plaintiffs filed the Consolidated Class Action Complaint ("CCAC"), which added Psaropoulos, Ryan Whooley, Lewis Bateman, David Brill, Jon Brosnahan, Dan Costantino, and Marshall Jensen as named defendants (together with the Original Defendants, the "Defendants"). The CCAC was brought on behalf of all persons and entities that purchased Voyager Earn Accounts or VGX Tokens (defined below) between January 1, 2020 and May 26, 2023, inclusive, and added claims for violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder for allegedly making false and misleading statements. The CCAC also asserted a claim for violations of Section 10(b) of the Exchange Act for scheme liability from March 1, 2022 through July 1, 2022. [ECF

No. 52].  On August 15, 2023, Defendants filed a pre-motion letter seeking leave to file a motion to dismiss the CCAC in favor of arbitration and for failure to state a claim.  [ECF No. 59].  On August 21, 2023, Plaintiffs filed their letter in response to Defendants' pre-motion letter and requested leave of Court to file a further amended complaint.  [ECF No. 60].

On September 15, 2023, Plaintiffs filed the First Amended Complaint (the "FAC").  [ECF No. 62].  On September 29, 2023, Defendants filed a second pre-motion letter seeking leave to file a motion(s) to dismiss.  [ECF No. 63].  On October 5, 2023, Plaintiffs filed their letter in response to Defendants' pre-motion letter.  [ECF No. 64].  On November 10, 2023, Defendants filed their motion to dismiss in favor of arbitration and for failure to state a claim.  [ECF No. 67].

On November 20, 2023, the Parties held an in-person mediation session with Murphy in New York City.  Though the Parties did not reach an agreement to settle the Action at that mediation session, they continued their negotiations through the Mediator.

On December 12, 2023, Plaintiffs filed their memorandum of law in opposition to Defendants' motion to dismiss.  [ECF No. 71].  On January 10, 2024, Defendants filed their reply in support of their motion to dismiss.  [ECF No. 72].

On January 15, 2024, the Mediator issued a "mediator's recommendation" to settle the Action for $6,500,000, inclusive of Lead Counsel's attorneys' fees and expenses, which the Settling Parties thereafter accepted subject to the negotiation of a stipulation of settlement.  On January 31, 2024, the Settling Parties notified the Court that they had reached agreement in principle to settle the action.  [ECF No. 73].

2.    <u>Definitions</u>.

The following terms, as used in this Stipulation, have the following meanings:

a.    "Attorneys' Fee/Costs Cap" means the $1.4 million amount stipulated to in the Master Settlement Agreement that Lead Counsel agreed to cap their attorneys' fees and costs application and recovery, which amount shall include all costs and expenses reasonably and actually incurred in connection with providing Notice and obtaining Final Court Approval (defined below) and be included in their Fee and Expense Application.

b.    "Claims Administrator" means the entity to be appointed by the Court to disseminate Notice to Class Members, as further provided herein, and to administer the Settlement. The Parties agree to recommend to the Court that the Plan Administrator be appointed to serve as the Claims Administrator, on such terms as Lead Counsel and the Plan Administrator agree are fair and reasonable, and provided that the Plan Administrator agrees to be subject to the jurisdiction of the Court with respect to the performance of its obligations and the distribution of the Settlement Amount under this Stipulation.

c.      The "Class" or the "Settlement Class" means all persons and entities that were customers of Voyager as of July 5, 2022 and are entitled to receive future distributions under the Voyager Plan, excluding Ehrlich and Psaropoulos.

d.      "Class Action Effective Date" means the first date by which all of the events and conditions specified in Paragraph 6 below have been met and have occurred.

e.      "Class Member" or "Settlement Class Member" means any Person included in the definition of the Class or Settlement Class as set forth herein, and who does not timely and validly opt out of the Class or Settlement Class in accordance with the exclusion procedure and deadline set by the Court.

f.      "Complaint" means the FAC.

g.      "Court" means the United States District Court for the Southern District of New York.

h.      "Cryptocurrency" means a digital currency or crypto asset in which transactions are verified and records are maintained by a decentralized system using cryptography, rather than by a centralized authority, including stablecoins, digital coins and tokens, such as security tokens, utility tokens and governance tokens.

i.      "Earn Accounts" refer to the Cryptocurrency interest-bearing accounts on the Voyager platform.

j.      "Final Court Approval" means the Court has entered the Judgment in accordance with Paragraph 6 and the expiration of the time to appeal or seek re-argument, certification, certiorari, or other review with respect to such Judgment or, if any appeal, re-argument, writ of certiorari, or other review is filed and not dismissed, after such Judgment is upheld in all material respects and is no longer subject to re-argument, certification, certiorari, or other review.

k.      "Final Order Date" means the first business day after Final Court Approval is obtained.

l.      "Insurers" means and includes XL, Euclid, and Relm.

m.      "Judgment" means the proposed judgment and final order of dismissal with prejudice to be rendered by the Court substantially in the form and content attached hereto as **Exhibit B**.  "Judgment" also means, to the extent required by the context in this Stipulation, the "Alternate Judgment" as defined below.

5

n.      "Lead Counsel" means Scott+Scott Attorneys at Law LLP and Taylor-Copeland Law.

o.      "Master Settlement Agreement" means that certain Settlement Agreement dated April __, 2024, entered into by and between the Plan Administrator, the Insurers, Plaintiffs, and the Settling Defendants (and attached hereto as **Exhibit C**).

p.      "Net Settlement Fund" means the Settlement Fund less any Court-approved attorneys' fees and expenses awarded to Lead Counsel (up to the Attorneys' Fees/Costs Cap).

q.      "Notices" means collectively the (i) Notice of Pendency of Class Action and Proposed Settlement in substantially the same form attached as **Exhibit A-1**, (the "Settlement Notice"); (ii) Notice of Motion for Attorneys' Fees and Expenses; and (iii) Summary Notice, substantially in the form attached as **Exhibit A-2**, all of which are to be distributed by the Claims Administrator to potential members of the Class via last known-email address and published on the www.InvestVoyager.com website and on the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and The Block.

r.      "Person" means an individual, entity, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and/or any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

s.      "Plaintiffs" means Johnny Johnson, Eirian Johnson, Ezra Boekweg, Shaun Roberts, Ken Sheppard, and Randy Roberts.

t.      "Plan of Allocation" means the plan for allocating the Net Settlement Fund described in the Notice and summarized at Section 9 below, or in any alternate plan of allocation approved by the Court, whereby the Net Settlement Fund shall be distributed to Class Members.

u.      "Preliminary Approval Order" means an order by the Court substantially similar in form to **Exhibit A** hereto: (i) preliminarily approving the Settlement; (ii) approving the form of the Settlement Notice; and (iii) approving a plan for providing the Notices to Class Members by the Claims Administrator via last known-email address and by publication on the InvestVoyager.com website and on the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and The Block, and/or such other

method that is acceptable to the Claims Administrator and approved by the Court, that is practicable under the circumstances and satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995.

v.  "Released Claims" means all Released Settling Defendants' Claims and all Releasing Plaintiffs' Claims.

w.  "Releasing Plaintiffs' Claims" means any and all individual or class claims, demands, losses, rights, and causes of action of any nature whatsoever, known or Unknown Claims, whether arising under federal, state, common, or foreign law by the Releasing Plaintiff Parties against any of the Released Settling Defendant Parties and each and every former or current director, officer, and employee of Voyager, regardless of whether such director, officer, or employee was ever a named defendant in the Action, that have been or could have been asserted in the Action, or could in the future be asserted in any forum, domestic or foreign, or which arise out of, are based upon, or relate to in any way to (i) the purchase, sale, acquisition, or disposition of Voyager Earn Accounts and VGX Tokens (defined below) and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions involved, set forth, alleged, or referred to, in the Action.  For the avoidance of doubt, Releasing Plaintiffs' Claims do not include: (i) claims relating to the enforcement of the Settlement; (ii) any claims of Persons who submit a request for exclusion that is accepted by the Court; and (iii) any Releasing Plaintiffs' Claims against third parties, including those who acted in concert with or aided and abetted any wrongdoing by any Voyager director or officer.

x.  "Releasing Plaintiff Parties" means each and every Settlement Class Member, Plaintiff, Lead Counsel, and each of their respective past or present trustees, officers, directors, partners, employees, affiliates, contractors, principals, agents, attorneys, predecessors, successors, assigns, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, heirs, executors, and administrators of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members.  Releasing Plaintiff Parties does not include Voyager, the Plan Administrator, or any Person who timely and validly seeks exclusion from the Settlement Class.

y.  "Released Settling Defendants' Claims" means all claims and causes of action of any nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common, or foreign law, that Settling Defendants could have asserted against the Releasing Plaintiff Parties that arise out of, or relate in any way to, the institution,

prosecution, or settlement of the claims in the Action, except for claims relating to the enforcement of the Settlement or any claims against any Person who submits a request for exclusion that is accepted by the Court.

z.      "Released Settling Defendant Parties" means the Settling Defendants, Settling Defendants' Counsel (defined below) and each of their respective past or present direct or indirect subsidiaries, parents, affiliates, principals, successors, and predecessors, assigns, officers, directors, controlling shareholders, underwriters, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, accountants, auditors, financial or investment advisors or consultants, insurers; the spouses, members of the immediate families, representatives, heirs, executors, and administrators of the Settling Defendants, as well as any trust of which any Settling Defendant is the settlor or which is for the benefit of any of their immediate family members; and any firm, trust, corporation, or entity in which any Settling Defendant has a controlling interest.

aa.     "Released Parties" means the Released Settling Defendant Parties and the Releasing Plaintiff Parties.

bb.     "Releasing Parties" means each of the parties releasing a claim, as defined in the Stipulation.

cc.     "Settlement" means the settlement contemplated by this Stipulation.

dd.     "Settling Defendants" means Defendants Stephen Ehrlich and Evan Psaropoulos.

ee.     "Settling Defendants' Counsel" means Day Pitney LLP and Calfee, Halter & Griswold LLP.

ff.     "Settlement Fairness Hearing" means the hearing to be scheduled by the Court to (i) determine whether the Settlement is fair, reasonable, and adequate; and (ii) consider Lead Counsel's request for an award of attorneys' fees and expenses, including an award to Plaintiffs.

gg.     "Settling Parties" or "Parties" means Plaintiffs and Settling Defendants.

hh.     "Unknown Claims" means any Releasing Plaintiffs' Claims which Plaintiffs, any other Settlement Class Member, or any other Releasing Plaintiff Party does not know or suspect to exist in their favor at the time of the release of such claims, which, if known by them, might have affected their decision(s) with respect to this Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and any Released Settling Defendants' Claims which any Settling Defendant or any other Released Settling Defendant Party does not know

or suspect to exist in their favor at the time of the release of such claims, which, if known by them might have affected their decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Class Action Effective Date of the Settlement, Plaintiffs and Settling Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Released Parties shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Releasing Plaintiff Parties and Released Settling Defendant Parties acknowledge that they may hereafter discover facts in addition to, or different from, those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Releasing Plaintiffs' Claims or Released Settling Defendants' Claims, but the Settling Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Class Action Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, heretofore have existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.

Plaintiffs and Settling Defendants acknowledge, and each of the other Settlement Class Members and each of the other Released Parties shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

ii.    "VGX Token" means the VGX or Voyager token digital asset sold on the Voyager platform.

    jj.     "Voyager" refers collectively to Voyager Digital Holdings Inc., Voyager Digital LLC, and Voyager Digital Ltd.

    kk.    "Voyager D&O Policies" means those director and officer liability policies issued by the Insurers that provide coverage, according to the terms thereof, for the benefit of Voyager's directors and officers.

3.    <u>Release</u>.

    a.     Upon the Class Action Effective Date, the Releasing Plaintiff Parties shall, pursuant to and by operation of the Judgment, fully, finally, and forever waive, release, relinquish, dismiss, and discharge the Releasing Plaintiffs' Claims and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Releasing Plaintiffs' Claims. Claims to enforce this Stipulation are not released.

    b.     Upon the Class Action Effective Date, the Released Settling Defendant Parties shall, pursuant to and by operation of the Judgment, fully, finally, and forever relinquish and discharge the Released Settling Defendants' Claims against the Releasing Plaintiff Parties. Claims to enforce this Stipulation are not released.

4.    <u>Settlement Fund</u>.

    a.     "Settlement Fund" means six million, five hundred thousand dollars ($6,500,000) (the "Settlement Amount") that the Insurers are obligated to pay under the Master Settlement Agreement as consideration for the releases provided herein.

    b.     Other than causing the Insurers to pay the Settlement Amount pursuant to this section, Settling Defendants and the Insurers shall have no obligation to make any other payments to the Settlement Fund, to any Class Member, or to Lead Counsel.

5.    <u>Preliminary Approval Order and Settlement Fairness Hearing</u>.

    a.     As soon as practicable after execution of the Stipulation, and consistent with the Court's January 31, 2024 Order, Plaintiffs shall submit the Stipulation together with its exhibits (the "Exhibits") to the Court and apply for entry of the Preliminary Approval Order, substantially in the form of **Exhibit A** attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, and approval of dissemination of the Settlement Notice and Summary Notice, substantially in the forms of **Exhibit A-1** and **A-2** attached hereto.

b.    Lead Counsel shall request that the Court hold the Settlement Fairness Hearing (to consider whether to finally approve the Settlement and Plan of Allocation) on a date no earlier than 90 days from the date of issuance of Notice to the Class.  At or after the Settlement Fairness Hearing, Lead Counsel also will request that the Court approve its Fee and Expense Application (defined below).

c.    Any Class Member who wishes to opt out of the Class must submit to Lead Counsel a timely and valid written request (a "Request for Exclusion") on or before the opt-out deadline set forth in the Settlement Notice and Preliminary Approval Order.  A Request for Exclusion must be signed by the Class Member and must comply with the other requirements set forth in the Notice and Preliminary Approval Order.

d.    If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel shall request that the Court enter a Judgment substantially in the form annexed hereto as **Exhibit B**.

6.    <u>Conditions of Settlement</u>.

a.    The Settlement is conditioned on each of the following:

i.    Execution of the Master Settlement Agreement by the parties thereto;

ii.    Entry of the Preliminary Approval Order by the Court;

iii.    Entry of the Judgment, or a judgment substantially in the form and content of **Exhibit B** attached hereto, or a judgment in a form other than that provided above acceptable to all of the Settling Parties (the "Alternate Judgment");

iv.    Final Court Approval; and

v.    Payment by the Insurers of the Settlement Amount and all other amounts they are obligated to pay to the Claims Administrator under the Master Settlement Agreement.

b.    Upon the occurrence of all of the events referenced in Paragraph 6.a hereof, any and all remaining interest or right of Settling Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

7.    <u>Termination</u>.

a.    Defendants and Plaintiffs, through their respective counsel, shall each have the right to terminate the Settlement and this Stipulation by providing

written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of: (a) the Court's final non-appealable refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's final non-appealable refusal to approve this Stipulation or any material part of it; (c) the Court's final non-appealable refusal to enter the Judgment in any material respect; or (d) the date upon which the Judgment is finally modified or reversed in any material respect by an appellate court. Any orders with respect to Lead Counsel's Fee and Expense Application (defined below) shall not be a ground for termination of the Settlement or for the Settlement not becoming final.

b.      If Lead Counsel requests and the Court approves attorneys' fees or expenses that would reduce the Settlement Fund by more than the Attorneys' Fees/Costs Cap, or entry of a notice plan or Plan of Allocation that would result in materially higher notice and administration costs than what would be incurred under the notice plan and Plan of Allocation as described herein, the Plan Administrator, in his sole and absolute discretion, may within seven (7) business days of entry of such order terminate the Master Settlement Agreement by providing written notice of its intention to do so on the undersigned counsel for the Settling Parties, which will render this Stipulation null and void.

c.      If the Court does not appoint the Plan Administrator as the Claims Administrator, or makes his appointment subject to conditions inconsistent with the Plan Administrator's obligations as plan administrator under the Voyager Plan and/or the terms of this Stipulation, the Plan Administrator may within seven (7) business days of any such Court decision terminate the Master Settlement Agreement by providing written notice of his intention to do so on the undersigned counsel for the Settling Parties, which will render this Stipulation null and void.

8.      <u>Effect of Termination or Failure to Obtain Approval</u>.

If this Stipulation does not obtain final approval and the Judgment (or any Alternate Judgment) does not become final and non-appealable, or if the Stipulation is terminated pursuant to Paragraph 7, the Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of January 31, 2024, and the Action shall proceed in all respects as if this Stipulation and related orders had not been executed and without prejudice in any way from the negotiation, terms, or existence of this Settlement. Further, in that event:

a.      This Settlement and all of the negotiations, discussions, and statements with respect hereto, shall be inadmissible in the Action for all purposes and shall not entitle any party to recover costs incurred in connection with the implementation of this Settlement.

*Execution Version*

b.    All Parties reserve and have not waived any rights or arguments by entering into this Stipulation, including any arguments and/or defenses with respect to liability.

c.    The Stipulation and any subsequent Settlement documents shall be null and void and inadmissible in any proceeding before any court or tribunal.

9.    <u>Plan of Allocation and Administration of the Settlement Fund</u>.

The Claims Administrator shall distribute the Net Settlement Fund pursuant to the following plan of allocation:

a.    In full and final settlement of the claims asserted in the Action and in consideration of the releases provided herein, upon Final Court Approval, the Settling Defendants shall direct the Insurers to effectuate the transfer of the Settlement Fund to a settlement account maintained by the Claims Administrator for this purpose.

b.    Within five (5) business days following the later of: (i) the date the Fee and Expense Award becomes final and non-appealable, and (ii) the Class Action Effective Date, the Claims Administrator shall pay the amount awarded to Lead Counsel by the Court on their Fee and Expense Application (subject to the Attorneys' Fees/Costs Cap).

c.    The Claims Administrator will distribute the Net Settlement Fund (minus approximately $30,000 that will not be paid to Class Members due to the particular distribution requirements of the Voyager Plan) to members of the Settlement Class consistent with the terms set forth in the Plan Document, Art. III.C.3 and Art. VI, and the Plan Administrator Agreement.  Under those terms, Class Members shall be entitled to a distribution such that each member of the Settlement Class will receive its share of the Net Settlement Fund (valued in U.S. dollars) on a *pro rata* basis (the "Plan of Allocation"). This *pro rata* distribution is calculated per the Plan, based on the value of the Class Member's allowed bankruptcy claim.

d.    To the extent that a portion of the Settlement is not paid out from the Settlement Fund as authorized by this Stipulation or as otherwise ordered by the Court, such assets held by the Claims Administrator in the Settlement Fund shall be deemed to be held in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as they shall be distributed pursuant to this Stipulation.

e.    In the event that the Court declines to approve the proposed Plan of Allocation, Plaintiffs shall be responsible for proposing (and obtaining approval of) an alternate plan of allocation to which the Plan Administrator

13

has consented, and the Released Settling Defendant Parties shall have no responsibility or liability with respect thereto.

f.      Each Class Member who fails to submit a valid and timely Request for Exclusion shall be deemed to have submitted to the jurisdiction of the Court with respect to their claim.

g.      Upon the Class Action Effective Date, the Settlement shall be deemed final and conclusive against all Class Members in all respects, including, but not limited to, the release and covenant not to sue.

h.      Except for Settling Defendants' obligation to cause payment of the Settlement Amount, the Settling Defendants and Released Settling Defendant Parties shall have no responsibility for, involvement in, or liability whatsoever with respect to providing notice to the Class, the investment of or the distribution or distributions of the Settlement Fund, the determination, administration, or calculation of claims, the payment or withholding of taxes or tax expenses, any losses suffered by, or fluctuations in value of, the Settlement Fund, or any other losses incurred in connection therewith.

i.      In addition to Paragraph 12 hereof, no Person shall have any claim against Plaintiff, Lead Counsel, any other Person designated by Lead Counsel, and/or the Claims Administrator (including the Plan Administrator, if he serves as the Claim Administrator) based on distributions of the Settlement Fund made substantially in accordance with this Stipulation and the Settlement contained herein.

j.      Following the Class Action Effective Date, neither Settling Defendants nor the Insurers shall have any reversionary interest in the Settlement Fund, *i.e.* this is not a claims-made settlement.

10.    Attorneys' Fees and Costs.

a.      Lead Counsel may submit an application or applications (the "Fee and Expense Application") to the Court for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees and litigation expenses incurred in connection with prosecuting the Action and seeking approval of the Settlement through Final Court Approval, including any appeals, and providing the required Notices; and (b) an amount pursuant to 15 U.S.C. §77z-1(a)(4) in connection with Plaintiffs' representation of the Class (the "Fee and Expense Award"). Lead Counsel agree that they will not seek a Fee and Expense Award exceeding $1.4 million in fees and expenses (the "Attorneys' Fees/Costs Cap") and to waive any award to the extent it exceeds the Attorneys' Fees/Costs Cap.

b. Unless requested by the Court, Settling Defendants shall take no position on any application by Lead Counsel for an award of attorneys' fees, costs, or expenses in connection with this Settlement. Attorneys' fees, costs, and/or expenses awarded to Lead Counsel (including taxes thereon, as applicable) shall be paid solely out of, and shall not be in addition to, the Settlement Fund.

c. The amount of the Fee and Expense Award ordered by the Court is within the discretion of the Court.

d. The Settlement is not conditioned upon any award of attorneys' fees, costs, or expenses to Lead Counsel. Any order or proceedings relating to the application for attorneys' fees, costs, and/or expenses, any appeal from any order relating thereto or reversal or modification thereof, or any award that is less than Lead Counsel requested, shall not operate to terminate or cancel the Settlement, or affect or delay the finality of the Judgment approving the Settlement.

11. <u>No Admission</u>.

Throughout this Action, Settling Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever. Defendants have expressly denied, and continue to deny, that they have committed any act or omission giving rise to any liability under Sections 5, 12, and 15 of the Securities Act of 1933, Sections 10(b) or 20(a) of the Securities Exchange Act 1934, or under the state law claims or any other claims asserted in the FAC. Specifically, Settling Defendants expressly have denied, and continue to deny, each and all of the claims alleged by Plaintiffs in the Action, including, without limitation, any liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Settling Defendants also have denied, and continue to deny, among other allegations, the allegations that Plaintiffs or the Class Members have suffered any damages, that Settling Defendants sold unregistered securities, participated in a fraudulent scheme, or made any material misrepresentations or omissions, or that Plaintiffs or the Class Members were harmed by the conduct alleged in the Action or that could have been alleged as part of the Action. In addition, Settling Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

The Parties agree that the proposed Settlement is a compromise of disputed claims and in no way represents, and may not be construed as, or received in evidence as, an admission of liability or an admission against interest or an admission of any wrongdoing whatsoever by any of the Settling Defendants. The Settlement shall not be construed as, or received in evidence as, an admission, concession, or presumption against the Plaintiffs or any of the Class Members that any of their claims are without merit, or that any defenses asserted by the Settling Defendants have any merit, or that damages recoverable in the Action would not have exceeded the Settlement Fund. The Settlement and all negotiations, discussions, and proceedings in connection with the Settlement shall not create an inference of wrongdoing, and are inadmissible for any purpose other than the enforcement of the terms of this Settlement.

12.   <u>Liability</u>.  Neither the Parties nor their counsel shall have any liability for any act, omission, or determination of the Claims Administrator, or any of his respective designees or agents, in connection with the administration of the Settlement Fund, the payment or withholding of any taxes, tax expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns, or otherwise.

13.   <u>Costs</u>.  Each party shall bear his, her, or its own costs, expenses, and legal fees, except as awarded to Lead Counsel from the Settlement Fund.

14.   <u>Stay of Proceedings</u>.  Pending Final Court Approval, the Parties shall not seek relief in any forum, and all proceedings in the Action shall be stayed and suspended, except that the Parties shall take all such action and file such papers as are necessary and appropriate to effect the consummation and approval of the Settlement.  Pending Final Court Approval, all Class Members shall be barred and enjoined from prosecuting any of the Releasing Plaintiffs' Claims against any of the Released Settling Defendant Parties.

15.   <u>CAFA Notice</u>.  Pursuant to CAFA, no later than ten (10) calendar days after this Stipulation is filed with the Court, the Settling Defendants shall complete or cause to be completed service on the appropriate federal and state government officials of all notices required under the Class Action Fairness Act, 28 U.S.C. §1715, and shall thereafter notify Lead Counsel as to completion of such service.   The Claims Administrator shall cooperate in the provision of information concerning Class Members as reasonably necessary to facilitate such service.

16.   <u>Authority</u>.  Lead Counsel, on behalf of the Class, is expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms, and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which it deems appropriate. Each counsel or other Person executing this Stipulation, its Exhibits, or any related Settlement document, on behalf of any party hereto hereby warrants that such Person has the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms, without requiring additional consent, approval, or authorization of any other Person, board, entity, tribunal, or other regulatory or governmental authority.

17.   <u>No Privilege Waiver</u>.  Nothing in the Stipulation, or the negotiations relating thereto, is intended to, or shall be deemed to, constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

18.   <u>No Disparagement</u>.  While maintaining their position that the claims asserted in the Action are meritorious, Plaintiffs and Lead Counsel shall not make any public statement or statements (whether or not for attribution) that disparage the business, conduct, or reputation of the Settling Defendants or Settling Defendants' Counsel or that describe or characterize the discovery record in the Action more generally in a way that suggests that Plaintiffs would have prevailed at trial.

19.    <u>Governing Law</u>.    This Stipulation shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to New York's conflict of law rules.  All disputes regarding the existence, validity, or enforceability of this Stipulation shall be filed in the United States District Court for the Southern District of New York.  If any disputes arise out of the finalization of the settlement documentation or the Settlement itself prior to submission to the Court of the application for preliminary approval of the Settlement, those disputes will be resolved by the Mediator first by way of expedited telephonic mediation and, if unsuccessful, then by final, binding, non-appealable resolution by the Mediator, with the fees and expenses of the Mediator to be divided equally between Plaintiffs, on the one hand, and Defendants, on the other.

20.    <u>Party Notice</u>.  When this Stipulation requires or contemplates that one party shall give notice to another, notice shall be provided by e-mail and next-day (excluding weekends) express delivery service as follows:

a.    If to Plaintiffs and the Class, then to:

Scott+Scott Attorneys at Law LLP
Sean T. Masson
The Helmsley Building
230 Park Avenue, 17th Floor
New York, New York 10169
smasson@scott-scott.com

b.    If to Defendants, then to:

Day Pitney LLP
Helen Harris
Daniel L. Schwartz
One Stamford Plaza, 7th Floor
263 Tresser Boulevard
Stamford, CT 06901
hharris@daypitney.com
dschwartz@daypitney.com

Calfee, Halter & Griswold LLP
K. James Sullivan
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
kjsullivan@calfee.com

21.    <u>Successors</u>.  Except as otherwise provided herein, this Stipulation shall be binding upon, and shall inure to the benefit of, the Parties and their respective agents, successors, executors, heirs, and assigns.

22.    <u>No Party Is the Drafter</u>.  None of the Parties hereto shall be considered to be the drafter of this Stipulation or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.  All Parties agree that this Stipulation was drafted at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Stipulation was made or executed.

23.    <u>Calculation of Time Period</u>.  All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Stipulation or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a federal holiday, in which case the period shall run until the end of the next day that is not one of the aforementioned days.  As used herein, "legal holiday" includes New Year's Day, Martin Luther King, Jr., Day, Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a federal holiday.

24.    <u>Entire Agreement</u>.  This Stipulation, including the Exhibits thereto, contains the Parties' entire agreement, and supersedes any prior oral or written agreements, negotiations, and/or communications by the Parties on the subject matter hereof.

25.    <u>Amendment; Waiver</u>.  This Stipulation shall not be modified in any respect except by a writing executed by all the Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party.  The waiver by any party of any breach of this Stipulation shall not be deemed or construed as a waiver of any other prior, subsequent, or contemporaneous breach of this Stipulation.

26.    <u>Federal Rule of Civil Procedure Rule 11 Compliance</u>.  The Parties agree that each has fully complied with Rule 11 of the Federal Rules of Civil Procedure.

27.    <u>Execution</u>.  This Stipulation may be executed in counterparts by facsimile or original signature, each of which shall constitute and be deemed one and the same instrument. Each of the attorneys executing this Stipulation on behalf of their respective client(s) hereby represents and warrants that they have full power and authority to do so.

[Signatures on following pages]

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**

Sean T. Masson
on behalf of Plaintiffs Johnny Johnson,
Eirian Johnson, Ezra Boekweg, Shaun
Roberts, Ken Sheppard, and Randy Roberts

**Dated:** ___April 3, 2024___

**DAY PITNEY LLP**

Helen Harris
on behalf of Defendant Stephen Ehrlich

**Dated:** ___4/3/24___

**CALFEE, HALTER & GRISWOLD LLP**

K. James Sullivan
on behalf of Defendant Evan Psaropoulos

**Dated:** _____

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**

**DAY PITNEY LLP**

_____
Sean T. Masson
on behalf of Plaintiffs Johnny Johnson,
Eirian Johnson, Ezra Boekweg, Shaun
Roberts, Ken Sheppard, and Randy Roberts

_____
Helen Harris
on behalf of Defendant Stephen Ehrlich

**Dated**: _____

**Dated**: _4/3/24_____

**CALFEE, HALTER & GRISWOLD LLP**

_____
K. James Sullivan
on behalf of Defendant Evan Psaropoulos

**Dated**: _April 3, 2024_____

# EXHIBIT A

(Proposed Order Preliminarily Approving Settlement and
Providing for Notice)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAUN ROBERTS and KEN SHEPPARD, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>STEPHEN EHRLICH, GERARD HANSHE, DAVID BROSGOL, JANICE BARRILLEAUX, PHILIP EYTAN, JARRETT LILIEN, RYAN WHOOLEY, LEWIS BATEMAN, DAVID BRILL, JON BROSNAHAN, DAN COSTANTINO, MARSHALL JENSEN, and EVAN PSAROPOULOS, and BRIAN BROOKS,<br><br>　　　　　　　　　　　Defendants. | Case No. 1:22-cv-09590-PKC<br><br>Assigned Judge: Hon. P. Kevin Castel<br><br>**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE** |

WHEREAS, on January 31, 2024, the Parties notified the Court that an agreement in principle was reached to resolve the action.  ECF No. 73.

WHEREAS, on January 31, 2024, the Court entered an order deeming the previously filed motion to dismiss as withdrawn without prejudice to reinstatement.  ECF No. 74.

WHEREAS, the Lead Plaintiffs Johnny Johnson, Eirian Johnson, and Ezra Boekweg ("Lead Plaintiffs"), along with additional named plaintiffs Shaun Roberts, Ken Sheppard, and Randy Roberts (together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and each Class Member (as defined below), by and through Lead Counsel (defined below); and Stephen Ehrlich ("Ehrlich") and Evan Psaropoulos ("Psaropoulos" and together the "Settling Defendants"), in the above-entitled action (the "Action"), entered into a Stipulation of Settlement dated April xx, 2024 (the "Stipulation" or "Settlement"), which is subject to review and approval by this Court and which, together with the Exhibits thereto, sets forth the terms and conditions for the Settlement of

1

the claims alleged in the Action; and the Court having read and considered the Stipulation and the accompanying documents; and the Parties to the Stipulation having consented to the entry of this Order; and all capitalized terms used herein having the meanings defined in the Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED, this ___ day of _____, 2024, that:

1.    The Court preliminarily finds that:

(a)    the Settlement resulted from informed, extensive arm's-length negotiations, including mediation under the direction of a highly experienced mediator, David M. Murphy, Esq. of Phillips ADR Enterprises;

(b)    the Settlement is sufficiently fair, reasonable, and adequate to warrant providing notice of the Settlement to the Class; and

(c)    the Settlement Class shall be composed of all persons and entities that were customers of Voyager as of July 5, 2022 and are entitled to receive future distributions under the Voyager Plan, excluding Ehrlich and Psaropoulos.

2.    A hearing (the "Settlement Fairness Hearing") is hereby scheduled to be held before the Court, either in person or remotely at the Court's discretion, on a date no earlier than 90 days from the date notice is given pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), on _____ __, 2024, at _____ a.m./p.m., for the following purposes:

(a)    to determine whether the proposed Settlement is fair, reasonable, and adequate, and should be approved by the Court;

(b)    to determine whether Judgment as provided under the Stipulation should be entered;

(c)    to determine whether the proposed Plan of Allocation should be approved by the Court as fair, reasonable, and adequate;

(d)    to consider Lead Counsel's Fee and Expense Application;

(e)    to consider the named Plaintiffs' requests for the payment of their time and expenses they incurred in prosecuting this litigation on behalf of the Class; and

(f)    to rule upon such other matters as the Court may deem appropriate.

3.    The Court reserves the right to approve the Settlement with or without modification and with or without further notice to the Class and may adjourn the Settlement Fairness Hearing without further notice to the Class.  The Court reserves the right to enter the Judgment approving the Settlement regardless of whether it has approved any Fee and Expense Award.

4.    The Court approves the form, substance, and requirements of the Notice of Proposed Settlement of Class Action (the "Notice") and the Summary Notice of Proposed Settlement of Class Action (the "Summary Notice"), annexed hereto as **Exhibits A-1** and **A-2**, respectively.

5.    The Court approves the appointment of Paul R. Hage, acting in his capacity as the Plan Administrator for the Voyager Wind Down Debtor as the Claims Administrator to supervise and administer the notice procedure in connection with the proposed Settlement as follows:

(a) The Claims Administrator shall cause the Notice, substantially in the form annexed hereto, to be emailed within twenty (20) calendar days of this Order, to all potential Class Members via last known-email address and published on the www.InvestVoyager.com website (the "Website"), and the Summary Notice on the following online Cryptocurrency media outlets: Coindesk, CoinTelegraph, and the Block.

  (b) The Claims Administrator shall post the Stipulation and the executed Order Preliminarily Approving Settlement and Providing for Notice on the Website. The Claims Administrator shall post to the Website the papers in support of the Settlement and the Fee and Expense Application after they are filed. The Website shall provide summary information regarding the case and Settlement and highlight important dates, including the date of the Settlement Fairness Hearing. All posted documents shall be available for downloading from the Website.

6. At least seven (7) calendar days prior to the Settlement Fairness Hearing, Lead Counsel shall serve on Settling Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such service, which shall also describe the Claims Administrator's efforts to provide notice to Settlement Class Members in compliance with the specific requirements set forth above.

7. This Order and the Stipulation, whether the Settlement contemplated by the Stipulation is consummated or not, and any statements made or proceedings taken pursuant to them are not, shall not be deemed to be, and may not be argued to be or offered or received:

  (a) Against any of the Released Settling Defendant Parties or their legal counsel as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Released Settling Defendant Parties with respect to the truth of any fact alleged in the Complaint or the Action, or the validity of any claim that has been, or could have been, asserted against any of the Settling Defendants in the Complaint or the Action, or the deficiency of any defense that has been, or could have been, asserted in the Action, or of any wrongdoing or liability by any of the Settling Defendants, or any liability,

4

fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the Settling Defendants;

(b)    Against the Plaintiffs or any Settlement Class Member or Lead Counsel as evidence of, or construed as evidence of, any infirmity of the claims alleged by the Plaintiffs in the Complaint or the Action or of any lack of merit to the claims in the Complaint or the Action or of any bad faith, dilatory motive, or inadequate prosecution of the claims in the Complaint or the Action;

(c)    Against any of the Settling Defendants, the Plaintiffs, or any Settlement Class Member, or their respective legal counsel, as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Settling Defendants, the Plaintiffs, or any Settlement Class Member, or their respective legal counsel, with respect to any liability, negligence, fault, or wrongdoing as against any of the Settling Defendants, the Plaintiffs, or any Settlement Class Member, or their respective legal counsel, in any other civil, criminal, or administrative action or proceeding, other than such actions or proceedings as may be necessary to effectuate the provisions of the Stipulation;

(d)    Against any of the Settling Defendants or their legal counsel as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that any of the Plaintiffs' claims have merit, or that any defenses asserted by the Settling Defendants are without merit, or that the Settlement

Amount represents the amount which could or would have been received after any trial of the Action against them; or

(e)     Against the Plaintiffs or any Settlement Class Member or Lead Counsel as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Plaintiffs or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by the Settling Defendants have any merit, or that damages recoverable in the Action would not have exceeded the Settlement Fund.

8.      The form and content of the Notice and the Summary Notice, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, satisfy all applicable requirements of the Federal Rules of Civil Procedure (including Rules 23(c)-(e)), the U.S. Constitution (including the Due Process Clause), Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as added by the Private Securities Litigation Reform Act of 1995, the Rules of this Court, and other applicable law, and constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.

9.      Each Class Member who does not timely and validly request exclusion from the Class or Settlement Class shall automatically participate in the Net Settlement Fund.

10.     Class Members shall be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless they request exclusion from the Class in a timely and proper manner, as hereinafter provided.  A Class Member wishing to make such request shall, no later than twenty-one (21) calendar days prior to the date scheduled herein for the Settlement Fairness Hearing, mail a Request for Exclusion in written form by First-Class Mail postmarked to

the address designated in the Notice.  Such Request for Exclusion shall indicate the name, address, email address, and telephone number of the person seeking exclusion, and that the person requests to be excluded from the Class, and must be signed by such person.  The Request for Exclusion shall not be effective unless it is made in writing, within the time stated above, and the exclusion is accepted by the Court.  Class Members requesting exclusion from the Class shall not be entitled to receive any payment out of the Net Settlement Fund as described in the Stipulation and Notice.

11.     Upon receiving any Request for Exclusion, Lead Counsel shall promptly provide copies of such request(s) to Settling Defendants' counsel within seven (7) calendar days after receiving any Request for Exclusion.

12.     Any Settlement Class Member and any other interested person may appear at the Settlement Fairness Hearing or by counsel and be heard, to the extent allowed by the Court, either in support of, or in opposition to, the matters to be considered at the hearing, provided, however, that no person shall be heard, and no papers, briefs, or other submissions shall be considered by the Court in connection to such matters, unless postmarked no later than _____, 2024, which is twenty-one (21) calendar days prior to the date scheduled herein for the Settlement Fairness Hearing, and provided such person files with the Court a statement of objection signed by the objector, even if represented by counsel, setting forth: (i) whether the person is a Settlement Class Member; (ii) to which part of the Stipulation the Settlement Class Member objects; and (iii) the specific reason(s), if any, for such objection including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of such objection.  Such Settlement Class Member shall also provide documentation sufficient to evidence their membership in the Settlement Class.  Settlement Class Members wishing to appear in person at the Settlement Fairness Hearing must submit a Notice of

Intention to Appear with the objection.  If the objector intends to appear at the Settlement Fairness Hearing through counsel, the objection must be postmarked no later than _____, 2024, which is twenty-one (21) calendar days prior to the date scheduled herein for the Settlement Fairness Hearing, and the objection must also state the identity of all attorneys who will appear at the Final Approval Hearing and such counsel must submit a Notice of Intention to Appear with the objection.  Objection materials must be sent to the following:

| COURT | CLASS COUNSEL | DEFENDANTS' COUNSEL |
|---|---|---|
| Clerk of the Court United States District Court for the Southern District of New York 500 Pearl Street Courtroom 11D New York, NY 10007 | Sean T. Masson Scott+Scott Attorneys at Law LLP The Helmsley Building 230 Park Ave., 17th Fl. New York, New York 10169  James Taylor-Copeland Taylor-Copeland Law 501 W. Broadway Suite 800 San Diego, CA 92101 | Helen Harris Daniel L. Schwartz Day Pitney LLP One Stamford Plaza, 7th Floor 263 Tresser Boulevard Stamford, CT 06901 (Counsel for Settling Defendant Stephen Ehrlich)  K. James Sullivan Calfee, Halter & Griswold LLP The Calfee Building 1405 East Sixth Street Cleveland, OH 44114 (Counsel for Settling Defendant Evan Psaropoulos) |

13.    All papers in support of the Settlement and any Fee and Expense Application shall be filed and served fourteen (14) calendar days prior to the deadline in Paragraph 12 for objections to be filed.  All reply papers shall be filed and served at least seven (7) calendar days prior to the Settlement Fairness Hearing.

14.    Any Person who is excluded from the Class by virtue of having submitted a valid and timely Request for Exclusion may, at any point up to the day of the Settlement Fairness Hearing, submit a written revocation of Request for Exclusion following the same instructions in Paragraph 10 above.

15.     The Court approves the appointment of the Claims Administrator as the escrow agent to manage the Settlement Fund for the benefit of the Settlement Class.

16.     Upon payment of the Settlement Amount ($6,500,000) to the Claims Administrator by or on behalf of Settling Defendants and/or their insurers, the Settlement Fund shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

17.     Settling Defendants' counsel and Lead Counsel shall promptly furnish each other with copies of any and all objections that come into their possession.

18.     Pending final determination of whether the Settlement should be approved, this Action shall be stayed and the Plaintiffs, all Class Members, and any Person claiming through or on behalf of them, shall not institute, commence, maintain ,or prosecute, and are hereby barred and enjoined from instituting, commencing, maintaining, or prosecuting, any proceeding in any court or tribunal that asserts any Releasing Plaintiffs' Claims, except that the Parties shall take all such actions and file such papers as are necessary and appropriate to effect the consummation and approval of the Settlement.

19.     All reasonable expenses incurred in notifying Class Members  shall be paid as set forth in the Stipulation.

20.     If any specified condition to the Settlement set forth in the Stipulation is not satisfied and Plaintiffs or Settling Defendants elect to terminate the Settlement, then the Stipulation, including any amendment(s) thereof, shall be null and void, of no further force or effect without prejudice to any party, and may not be introduced as evidence or referred to in any

action or proceeding by any person or entity for any purpose, and each party shall be restored to their respective position as it existed on January 31, 2024.

21.    The Settling Defendants and any of the Released Settling Defendant Parties shall have no responsibility for the administration of the Settlement, and neither the Settling Defendants nor any of the Released Settling Defendant Parties shall have any obligation or liability to the Plaintiffs, Lead Counsel, or the Settlement Class in connection with such administration.

22.    No Person shall have any claim against Plaintiffs, Lead Counsel, the Settlement Class Members, the Claims Administrator, the Settling Defendants, the Released Settling Defendant Parties, or any other agent designated by Lead Counsel based on distributions of the Settlement Fund, whether or not made substantially in accordance with the Stipulation and the Settlement contained therein.

23.    Pursuant to CAFA, Settling Defendants shall take reasonable steps to complete service promptly on the appropriate federal and state government officials of all notices required under the Class Action Fairness Act, 28 U.S.C. §1715, and shall thereafter notify Lead Counsel as to completion of such service.

24.    The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of, or connected with, the Settlement.  The Court may approve the Settlement, with such modifications as may be agreed by the Settling Parties, if appropriate, without further notice to the Class.


DATED:  _____          _____
                                        P. KEVIN CASTEL, U.S.D.J.
                                        SOUTHERN DISTRICT OF NEW YORK

# EXHIBIT A-1

(Notice of Pendency of Class Action and Proposed Settlement)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAUN ROBERTS and KEN SHEPPARD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN EHRLICH, GERARD HANSHE, DAVID BROSGOL, JANICE BARRILLEAUX, PHILIP EYTAN, JARRETT LILIEN, RYAN WHOOLEY, LEWIS BATEMAN, DAVID BRILL, JON BROSNAHAN, DAN COSTANTINO, MARSHALL JENSEN, and EVAN PSAROPOULOS, and BRIAN BROOKS,<br><br>Defendants. | Case No. 1:22-cv-09590-PKC<br><br>Assigned Judge: Hon. P. Kevin Castel<br><br>**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION** |

**TO:    ALL PERSONS AND ENTITIES THAT WERE CUSTOMERS OF VOYAGER AS OF JULY 5, 2022.[1]**

**THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

## WHY SHOULD I READ THIS NOTICE?

This Notice is given pursuant to an order issued by the United States District Court for the Southern District of New York (the "Court"). This Notice serves to inform you of the proposed settlement of the above class action lawsuit (the "Settlement") for $6,500,000 in cash, which Class Members may be eligible to participate in, and the hearing (the "Settlement Fairness Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, as set forth in the Stipulation. The Stipulation is by and between: (i) Lead Plaintiffs Johnny Johnson, Eirian Johnson, and Ezra Boekweg ("Lead Plaintiffs"), along with additional named plaintiffs Shaun Roberts, Ken Sheppard, and Randy Roberts (together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and each Class Member (as defined below), by and through Lead Counsel (defined below); and (ii) Stephen Ehrlich ("Ehrlich") and Evan Psaropoulos ("Psaropoulos")

---

[1]    All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement and Release dated April xx, 2024 (the "Stipulation"), which is available at www.InvestVoyager.com.

(collectively, the "Settling Defendants"), by and through Settling Defendants' Counsel.  Upon and subject to the terms and conditions hereof, Plaintiffs, on behalf of themselves and the Class, on the one hand, and each of the Settling Defendants, on the other hand (collectively, "Settling Parties"), intend this Settlement to be a final and complete resolution of all disputes between the Settling Parties with respect to the Action.  This Notice is not an expression of any opinion by the Court as to the merits of the claims or defenses asserted in the lawsuit.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **ACTIONS YOU MAY PURSUE** | **EFFECT OF TAKING THIS ACTION** |
| **DO NOTHING.** | Get payment.  You will not have a right to pursue any other lawsuit against the Settling Defendants and Released Parties relating to this case. |
| **EXCLUDE YOURSELF FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION POSTMARKED NO LATER THAN ___, 2024.** | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against the Settling Defendants and the Released Parties relating to this case. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION POSTMARKED NO LATER THAN _____, 2024.** | Write to the Court about why you don't like the Settlement. |
| **ATTEND THE SETTLEMENT FAIRNESS HEARING ON _____, 2024 AT _____.** | Speak in Court about the fairness of the Settlement. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made to Class Members if the Court approves the Settlement and, if there are any appeals, after the appeals are resolved. Please be patient.

**WHAT IS THIS LAWSUIT ABOUT?**

**The Allegations and Status of the Case**

On November 9, 2022, Plaintiffs Shaun Roberts and Ken Sheppard filed a putative class action complaint in the United States District Court for the Southern District of New York against Ehrlich, as well as other former officers/directors of Voyager: Janice Barrilleaux, Brian Brooks, David Brosgol, Philip Eytan, Gerard Hanshe, and Jarrett Lilien (collectively, the "Original Defendants").  [ECF No. 1].  The lawsuit was brought on behalf of persons and entities that

purchased Voyager Earn Accounts ("Earn Accounts") and the VGX Tokens between January 1, 2020 and November 9, 2022, inclusive, and alleged violations of Sections 5, 12(a)(1), and 15 of the Securities Act of 1933, Sections 25110, 25503, and 25504 of the California Corporations Code, and Sections 49:3-60 and 49:3-71-D of the New Jersey Uniform Securities Law, as well as common law claims for unjust enrichment/restitution.  On April 19, 2023, Plaintiffs Johnny Johnson, Eiran Johnson, and Ezra Boekweg were appointed as Co-Lead Plaintiffs and their counsel, Scott+Scott and Taylor-Copeland Law, were appointed as Lead Counsel.  [ECF No. 49].

On May 26, 2023, Plaintiffs filed the Consolidated Class Action Complaint ("CCAC"), which added Psaropoulos, Ryan Whooley, Lewis Bateman, David Brill, Jon Brosnahan, Dan Costantino, and Marshall Jensen as named defendants (together with the Original Defendants, the "Defendants").  The CCAC was brought on behalf of all persons and entities that purchased Voyager Earn Accounts or VGX Tokens between January 1, 2020 and May 26, 2023, inclusive, and added claims for violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder for allegedly making false and misleading statements.  The CCAC also asserted a claim for violations of Section 10(b) of the Exchange Act for scheme liability from March 1, 2022 through July 1, 2022.  [ECF No. 52].  On August 15, 2023, Defendants filed a Letter Motion for Conference for leave to file a motion to dismiss the CCAC in favor of arbitration and for failure to state a claim.  [ECF No. 59].  On August 21, 2023, Plaintiffs filed their letter in response to Defendants' pre-motion letter and requested leave of Court to file a further amended complaint.  [ECF No. 60].

On September 15, 2023, Plaintiffs filed the First Amended Complaint (the "FAC").  [ECF No. 62].  On September 29, 2023, Defendants filed their pre-motion letter for leave to file a motion(s) to dismiss.  [ECF No. 63].  On October 5, 2023, Plaintiffs filed their letter in response to Defendants' pre-motion letter.  [ECF No. 64].  On November 10, 2023, Defendants filed their motion to dismiss in favor of arbitration and for failure to state a claim.  [ECF No. 67].

On November 20, 2023, the Parties held an in-person mediation session with David M. Murphy of Philips ADR Enterprises (the "Mediator") in New York City.  Though the Parties did not reach an agreement to settle the Action at that mediation session, they continued their negotiations through the Mediator.

On December 12, 2023, Plaintiffs filed their memorandum of law in opposition to Defendants' motion to dismiss.  [ECF No. 71].  On January 10, 2024, Defendants filed their reply in support of their motion to dismiss.  [ECF No. 72].

On January 15, 2024, the Mediator issued a "mediator's recommendation" to settle the Action for $6,500,000, inclusive of Lead Counsel's attorneys' fees and expenses, which the Settling Parties thereafter accepted.  The Settling Parties notified the Court on January 31, 2024 that they have reached agreement in principle to settle the action.  [ECF No. 73].

Throughout this Action, the Settling Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever.  Settling Defendants have expressly denied, and continue to deny, that they have committed any act or omission giving rise to any liability under the causes of action alleged.  Specifically, Settling Defendants expressly

have denied, and continue to deny, each and all of the claims alleged by Plaintiffs in the Action including, without limitation, any liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Settling Defendants also have denied, and continue to deny, among other allegations, the allegations that Plaintiffs or the Class Members have suffered any damages, that Settling Defendants made any material misrepresentations or omissions, or that Plaintiffs or the Class Members were harmed by the conduct alleged in the Action or that could have been alleged as part of the Action. In addition, Settling Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

**THE COURT HAS NOT RULED AS TO WHETHER SETTLING DEFENDANTS ARE LIABLE TO PLAINTIFFS OR THE CLASS. THIS NOTICE IS NOT INTENDED TO BE AN EXPRESSION OF ANY OPINION BY THE COURT WITH RESPECT TO THE TRUTH OF THE ALLEGATIONS IN THIS LAWSUIT OR THE MERITS OF THE CLAIMS OR DEFENSES ASSERTED. THIS NOTICE IS SOLELY TO ADVISE YOU OF THE PENDENCY OF THE ACTION AND PROPOSED SETTLEMENT THEREOF AND YOUR RIGHTS IN CONNECTION WITH THAT SETTLEMENT.**

**HOW DO I KNOW IF I AM A CLASS MEMBER?**

If you were a customer of Voyager as of July 5, 2022 and are entitled to receive future distributions under the Voyager Plan, you may be a Class Member. Voyager customers who did not participate in the initial, in-kind withdrawal by July 23, 2023 and did not cash the check mailed to them by April 20, 2024 are not eligible to receive any future distributions under the Voyager Plan. *See* Docket No. 1642 at 5 in *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (Bankr. S.D.N.Y.). As set forth in the Stipulation, excluded from the Class are the Settling Defendants.

If you are not sure if you are a Class Member, you can ask for free help. You can contact Sean T. Masson, a representative of Lead Counsel, at 1-800-332-2259.

**PLEASE NOTE:** Receipt of this Notice does not mean that you are a Class Member or that you will be entitled to receive a payment from the Settlement.

**WHAT IS THE MONETARY VALUE OF THE PROPOSED SETTLEMENT?**

The Settlement, if approved, will result in the creation of a cash settlement fund of $6,500,000 (the "Settlement Fund"), which will be deposited in a separate, interest-bearing account. Virtually all of the Settlement Fund, plus accrued interest and minus any attorneys' fees and expenses that may be approved by the Court (the "Net Settlement Fund"), will be distributed to Class Members pursuant to the Plan of Distribution that is described in the next section of this Notice. Less than $30,000 of the Net Settlement Fund will not be paid to Class Members due to the particular distribution requirements of the Voyager Plan.

Should the Court award attorneys' fees of up to 20% of the Settlement Fund (or $1,300,000), Lead Counsel's expenses of up to $40,000, an award to the Plaintiffs of up to a

combined $60,000, the Net Settlement Fund will be approximately $5,100,000. A Class Member's actual recovery will be a pro rata proportion of the Net Settlement Fund.

**WHAT IS THE PROPOSED PLAN OF ALLOCATION?**

The Claims Administrator will distribute the Net Settlement Fund (minus approximately $30,000 that will not be paid to Class Members due to the particular distribution requirements of the Voyager Plan) to members of the Settlement Class consistent with the terms set forth in the Voyager Plan, Art. III.C.3 and Art. VI, and the Plan Administrator Agreement. Under those terms, Class Members shall be entitled to a distribution such that each member of the Settlement Class will receive its share of the Net Settlement Fund (valued in U.S. dollars) on a *pro rata* basis. This *pro rata* distribution is calculated per the Voyager Plan, based on the value of the Class Member's allowed bankruptcy claim.

The Net Settlement Fund will not be distributed to Class Members unless and until the Court has (a) approved the Settlement; and (b) the time for any petition for rehearing, appeal, or review, whether by certiorari or otherwise, has expired.

Each Class Member who fails to submit a valid and timely Request for Exclusion shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her, or its claim. Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Class Members.

**MUST I CONTACT LEAD COUNSEL IN ORDER TO PARTICIPATE IN DISTRIBUTION OF THE SETTLEMENT FUND?**

No. If you have received this Notice and choose not to exclude yourself from the Class, you need not contact Lead Counsel. If you did not receive this Notice but believe you should have, or if your address changes, please contact Lead Counsel.

**THERE WILL BE NO PAYMENTS IF THE STIPULATION IS TERMINATED**

The Stipulation may be terminated under several circumstances outlined in it. If the Stipulation is terminated, the Action will proceed as if the Stipulation had not been entered into.

**WHAT ARE THE REASONS FOR SETTLEMENT?**

The Court has not reached any final decisions regarding the merits of the claims or defenses asserted in the Action. Instead, the Plaintiffs and the Settling Defendants have agreed to this Settlement, which was reached with the substantial assistance of the Mediator, who is a highly experienced mediator of complex class actions. In reaching the Settlement, the Parties have avoided the cost, delay, and uncertainty of further litigation.

As in any litigation, Plaintiffs and the Class would face an uncertain outcome if they did not agree to the Settlement. The Parties expected that the case could continue for an intense and longer period of time, delaying any possible recovery for the Class. Continuation

of the case against Settling Defendants could result in a judgment greater than this Settlement. Conversely, continuing the case could result in no recovery at all or a recovery that is less than the amount of the Settlement. Furthermore, even if the Class were successful, because the available insurance to pay any judgment was limited and other claims were asserted against the available insurance, the Class's ability to recover on any judgment was a significant risk.

Plaintiffs and Lead Counsel believe that this Settlement is fair and reasonable to the Members of the Class. They have reached this conclusion for several reasons. Specifically, if the Settlement is approved, the Class will receive a significant monetary recovery. Additionally, Lead Counsel believes that the significant and immediate benefits of the Settlement, when weighed against the significant risk, delay, and uncertainty of continued litigation and of any recovery, are an excellent result for the Class.

**WHO REPRESENTS THE CLASS?**

The law firm of Scott+Scott Attorneys at Law LLP and Taylor-Copeland Law represent you and other Class Members. These lawyers are called Lead Counsel. These lawyers will apply to the Court for payment of attorneys' fees and expenses from the Settlement Fund; you will not be otherwise charged for their work. If you want to be represented by your own lawyer, you may hire one at your own expense.

**HOW WILL LEAD COUNSEL BE PAID?**

Lead Counsel will file a motion for an award of attorneys' fees and expenses that will be considered at the Settlement Fairness Hearing. Lead Counsel will apply for an award not to exceed $1.3 million, plus payment of expenses incurred in connection with the Action in an amount not to exceed $40,000. In addition, named Plaintiffs may seek an award of up to $60,000 for their time and expenses incurred in representing the Class. Such sums as may be approved by the Court will be paid from the Settlement Fund. Class Members are not personally liable for any such fees or expenses.

The attorneys' fees and expenses requested will be the only payment to Lead Counsel for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis. Lead Counsel has committed significant time and expenses in litigating this case for the benefit of the Class. To date, Lead Counsel have not been paid for their services in conducting this Action on behalf of the named Plaintiffs and the Class, or for their expenses. The fees requested will compensate Lead Counsel for their work in achieving the Settlement. The Court will decide what constitutes a reasonable fee award and may award less than the amount requested by Lead Counsel.

**CAN I EXCLUDE MYSELF FROM THE SETTLEMENT?**

If you want to keep the right to sue or continue to sue Settling Defendants on your own about the legal issues in this case, then you must take steps to get out of the Class. This is called excluding yourself from, or "opting out" of, the Class.

To exclude yourself from the Class, you must send a letter by mail saying that you want to be excluded from the Class in the following action: *Roberts, et al., v. Ehrlich, et al.*, Case No. 1:22-cv-09590-PKC (S.D.N.Y.). Be sure to include your name, address, e-mail address, telephone number, and sign the letter. Your exclusion request must be postmarked no later than _____, 2024 and sent to Lead Counsel at the address listed on Page 8.

You cannot exclude yourself by phone or by e-mail. If you make a proper request for exclusion, you will not receive a Settlement payment, and you cannot object to the Settlement. If you make a proper request for exclusion, you will not be legally bound by anything that happens in this lawsuit. If you wish to be excluded from the Settlement Class, submit a request for exclusion only and do not submit an objection to the Settlement. If you do submit both a request for exclusion and an objection to the Settlement, your objection will be disregarded.

**CAN I OBJECT TO THE SETTLEMENT, THE REQUESTED ATTORNEYS' FEES AND EXPENSES, AND/OR PAYMENT TO CLASS REPRESENTATIVE?**

Yes. If you are a Class Member, you may object to the terms of the Settlement. Whether or not you object to the terms of the Settlement, you may also object to the requested attorneys' fees, costs, and expenses, and/or application for an award to the named Plaintiffs for their time and expenses. To object, you must write to the Court setting out your objection in the case known as *Roberts, et al. v. Ehrlich, et al.*, Case No. 1:22-cv-09590-PKC (S.D.N.Y.), stating why you think the Court should not approve any part or all of the Settlement, the requested attorneys' fees, costs, and expenses, and/or application for an award to the named Plaintiffs for their time and expenses. You must include your name, address, telephone number, and your signature; include documents sufficient to prove your membership in the Class. Your letter must also state the specific reasons why you object, including any legal or evidentiary support for your objection. Your objection must state whether it applies only to you, to a specific subset of the Class, or to the entire Class.

Your objection must be filed with the United States District Court for the Southern District of New York by hand or by mail at the address listed below such that it is **received on or before _____, 2024**, at the address set forth below. You must also serve the papers on Lead Counsel and Settling Defendants' Counsel at the addresses set forth below so that the papers are **received on or before _____, 2024**.

| COURT | LEAD COUNSEL | SETTLING DEFENDANTS' COUNSEL |
|---|---|---|
| Clerk of the Court United States District Court for the Southern District of New York 500 Pearl Street Courtroom 11D New York, NY 10007 | Sean T. Masson Scott+Scott Attorneys at Law LLP The Helmsley Building 230 Park Ave., 17th Fl. New York, New York 10169<br><br>James Taylor-Copeland Taylor-Copeland Law 501 W. Broadway Suite 800 San Diego, CA 92101 | Helen Harris Daniel L. Schwartz Day Pitney LLP One Stamford Plaza, 7th Floor 263 Tresser Boulevard Stamford, CT 06901 (Counsel for Settling Defendant Stephen Ehrlich)<br><br>K. James Sullivan Calfee, Halter & Griswold LLP The Calfee Building 1405 East Sixth Street Cleveland, OH 44114 (Counsel for Settling Defendant Evan Psaropoulos) |

Unless otherwise ordered by the Court, any Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will not be able to appear separately at the Settlement Hearing or to make any objection to the Settlement, the application for attorneys' fees, costs, and expenses, and/or application for an award to the Class Representative for their time and expenses.

If you hire an attorney (at your own expense) to represent you for purpose of objecting, your attorney must serve a notice of appearance on counsel listed above and file it with the Court (at the addresses set out above) by no later than _____, 2024.

## WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING MYSELF FROM THE SETTLEMENT?

Objecting is telling the Court that you do not like something about the proposed Settlement, Lead Counsel's request for an award of attorneys' fees and expenses, or an award to the named Plaintiffs for their time and expenses. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class or participate in the recovery. If you exclude yourself, you have no basis to object because the case no longer applies to you.

## HOW CAN I GET A PAYMENT?

If you do not expressly exclude yourself from the Class as described above and are entitled to future distributions under the Voyager Plan, you will be deemed a Class Member and receive payment in accordance with the proposed Plan of Distribution described above. You do not need to do anything to share in the Class recovery.

**WHAT CLAIMS WILL BE RELEASED BY THE SETTLEMENT?**

Unless you exclude yourself, you are staying in the Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit relating to securities claims involving the purchase or other acquisition of Voyager financial products at issue in this case. It also means that all of the Court's orders will apply to you and legally bind you and you will fully, finally, and forever release the Releasing Plaintiff Claims in this case.

"Released Claims" means all Released Settling Defendants' Claims and all Releasing Plaintiff Claims.

"Releasing Plaintiffs' Claims" means any and all individual or class claims, demands, losses, rights, and causes of action of any nature whatsoever, known or Unknown Claims, whether arising under federal, state, common, or foreign law by the Releasing Plaintiff Parties against any of the Released Settling Defendant Parties and each and every former or current director, officer, and employee of Voyager, regardless of whether such director, officer, or employee was ever a named defendant in the Action, that have been or could have been asserted in the Action, or could in the future be asserted in any forum, domestic or foreign, or which arise out of, are based upon, or relate to in any way to (i) the purchase, sale, acquisition, or disposition of Voyager Earn Accounts and VGX Tokens and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions involved, set forth, alleged, or referred to, in the Action. For the avoidance of doubt, Releasing Plaintiffs' Claims do not include: (i) claims relating to the enforcement of the Settlement; (ii) any claims of Persons who submit a request for exclusion that is accepted by the Court; and (iii) any Releasing Plaintiffs' Claims against third parties, including those who acted in concert with or aided and abetted any wrongdoing by any Voyager director or officer.

"Releasing Plaintiff Parties" means each and every Settlement Class Member, Plaintiff, Lead Counsel, and each of their respective past or present trustees, officers, directors, partners, employees, affiliates, contractors, principals, agents, attorneys, predecessors, successors, assigns, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, heirs, executors, and administrators of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. Releasing Plaintiff Parties does not include Voyager, the Plan Administrator, or any Person who timely and validly seeks exclusion from the Settlement Class.

"Released Settling Defendants' Claims" means all claims and causes of action of any nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common, or foreign law, that Settling Defendants could have asserted against the Releasing Plaintiff Parties that arise out of, or relate in any way to, the institution, prosecution, or settlement of the claims in the Action, except for claims relating to the enforcement of the Settlement or any claims against any Person who submits a request for exclusion that is accepted by the Court.

"Released Settling Defendant Parties" means the Settling Defendants, Settling Defendants' Counsel and each of their respective past or present direct or indirect subsidiaries, parents, affiliates, principals, successors, and predecessors, assigns, officers, directors, controlling shareholders, underwriters, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, accountants, auditors, financial or investment advisors or consultants, insurers; the spouses, members of the immediate families, representatives, heirs, executors, and administrators of the Settling Defendants, as well as any trust of which any Settling Defendant is the settlor or which is for the benefit of any of their immediate family members; and any firm, trust, corporation, or entity in which any Settling Defendant has a controlling interest.

"Released Parties" means the Released Settling Defendant Parties and the Releasing Plaintiffs Parties.

"Releasing Parties" means each of the parties releasing a claim, as defined in the Stipulation.

The above description of the proposed Settlement is only a summary. The complete terms are set forth in the Stipulation (including its exhibits), which may be obtained at www.InvestVoyager.com, or by contacting Lead Counsel listed on Page 8. In the event of any inconsistency between this notice and the Stipulation, the terms of the Stipulation control.

## THE SETTLEMENT FAIRNESS HEARING

The Court will hold a Settlement Fairness Hearing on _____, 2024, at _____ a.m./p.m., before the Honorable P. Kevin Castel at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., Courtroom 11D New York, NY 10007-1312, for the purpose of determining whether: (1) the Settlement of the Action for $6,500,000 in cash should be approved by the Court as fair, reasonable, and adequate; (2) to award Lead Counsel attorneys' fees and expenses out of the Settlement Fund; (3) to pay the named Plaintiffs for their time and expenses incurred in representing the Class; and (4) to enter the final Judgment as provided under the Stipulation. The Court may adjourn or continue the Settlement Fairness Hearing without further notice to Members of the Class. If you want to attend the hearing, you should check with Lead Counsel or www.InvestVoyager.com beforehand to be sure that the date and/or time have not changed.

Any Class Member may appear at the Settlement Fairness Hearing and be heard on any of the foregoing matters.

## HOW DO I OBTAIN ADDITIONAL INFORMATION?

This Notice contains only a summary of the terms of the proposed Settlement. The records in this Action may be examined and copied at any time during regular office hours, and subject to customary copying fees, at the Clerk of the Southern District of New York. In addition, all of the Settlement documents, including the Stipulation, this Notice, and proposed Judgment may be obtained on www.InvestVoyager.com, or by contacting Lead Counsel listed on Page 8.

In addition, you may contact Sean T. Masson, a representative of Lead Counsel, at 1-800-332-2259, if you have any questions about the Action or the Settlement or want to obtain Settlement documents.

**DO NOT WRITE TO, OR TELEPHONE, THE COURT FOR INFORMATION**

DATED: _____, 2024          BY ORDER OF THE UNITED STATES
                                            DISTRICT COURT FOR THE
                                            SOUTHERN DISTRICT OF NEW YORK

# EXHIBIT A-2

(Summary Notice)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAUN ROBERTS and KEN SHEPPARD, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-09590-PKC |
| Plaintiffs, | Assigned Judge: Hon. P. Kevin Castel |
| v. | **SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION** |
| STEPHEN EHRLICH, GERARD HANSHE, DAVID BROSGOL, JANICE BARRILLEAUX, PHILIP EYTAN, JARRETT LILIEN, RYAN WHOOLEY, LEWIS BATEMAN, DAVID BRILL, JON BROSNAHAN, DAN COSTANTINO, MARSHALL JENSEN, and EVAN PSAROPOULOS, and BRIAN BROOKS, | |
| Defendants. | |

**TO:    ALL PERSONS AND ENTITIES THAT WERE CUSTOMERS OF VOYAGER AS OF JULY 5, 2022.**

**THIS NOTICE WAS AUTHORIZED BY THE COURT.  IT IS NOT A LAWYER SOLICITATION.  PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Southern District of New York, that a hearing will be held on _____, 2024, at _____, before the Honorable P. Kevin Castel, United States District Judge, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, Courtroom 11D, New York, NY 10007, for the purpose of determining: (1) whether the proposed Settlement of the above-captioned Action, as set forth in the settlement agreement reached between the Parties, consisting of Six Million, Five Hundred Thousand dollars ($6,500,000) in cash, should be approved as fair, reasonable, and adequate to the Members of the Class; (2) whether the release by Class Members of claims as set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation") should be authorized; (3) whether the application by Lead Counsel for an award of attorneys' fees and expenses and any award to the named Plaintiffs should be approved; and (4) whether the Judgment, in the form attached to the Stipulation, should be entered.  The Court may change the date of the Settlement Hearing without providing another notice.  You do **NOT** need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

1

IF YOU WERE A CUSTOMER OF VOYAGER AS OF JULY 5, 2022 AND ARE ENTITLED TO RECEIVE FUTURE DISTRIBUTIONS UNDER THE VOYAGER PLAN, YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION.

To share in the distribution of the Net Settlement Fund, you do not need to do anything. If you are a member of the Class and do not request to be excluded from the Class, you will be bound by the Settlement and any judgment and release entered in the Action, including, but not limited to, the Judgment. Lead Counsel represents you and other Members of the Class. If you want to be represented by your own lawyer, you may hire one at your own expense.

If you have not received a copy of the Notice, which more completely describes the Settlement and your rights thereunder (including your right to object to the Settlement or exclude yourself from the Class), you may obtain these documents, as well as a copy of the Stipulation (which, among other things, contains definitions for the defined terms used in this Summary Notice) and other Settlement documents, online at www.InvestVoyager.com, or by writing to, emailing, or calling a representative of Lead Counsel at:

SCOTT+SCOTT ATTORNEYS AT LAW LLP
Sean T. Masson
230 Park Ave., 17th Floor
New York, NY 10169
Phone: 1-800-332-2259

Inquiries should **NOT** be directed to Defendants, the Court, or the Clerk of the Court.

IF YOU DESIRE TO BE EXCLUDED FROM THE CLASS AND THE SETTLEMENT, YOU MUST SUBMIT A REQUEST FOR EXCLUSION SUCH THAT IT IS POSTMARKED NO LATER THAN _____, 2024, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. ALL MEMBERS OF THE CLASS WHO HAVE NOT REQUESTED EXCLUSION FROM THE CLASS WILL BE BOUND BY THE SETTLEMENT ENTERED IN THE ACTION.

IF YOU ARE A CLASS MEMBER, YOU HAVE THE RIGHT TO OBJECT TO THE SETTLEMENT, THE REQUEST BY LEAD COUNSEL FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES, AND/OR THE APPLICATION FOR AN AWARD TO THE NAMED PLAINTIFFS FOR THEIR TIME AND EXPENSES. ANY WRITTEN OBJECTIONS MUST BE SENT TO THE COURT POSTMARKED NO LATER THAN _____, 2024, IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. IF YOU FAIL TO OBJECT IN THE MANNER AND FORM EXPLAINED IN THE NOTICE, YOU WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND WILL NOT BE ABLE TO APPEAR SEPARATELY AT THE SETTLEMENT HEARING OR MAKE ANY OBJECTION TO THE SETTLEMENT, THE REQUEST BY LEAD COUNSEL FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES, AND/OR THE APPLICATION FOR AN AWARD TO THE NAMED PLAINTIFFS FOR THEIR TIME AND EXPENSES.

DATED: _____, 2024        BY ORDER OF THE UNITED STATES
                                         DISTRICT COURT FOR THE
                                         SOUTHERN DISTRICT OF NEW YORK

# EXHIBIT B

(Proposed Judgment)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAUN ROBERTS and KEN SHEPPARD, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-09590-PKC |
| Plaintiffs, | Assigned Judge: Hon. P. Kevin Castel |
| v. | |
| STEPHEN EHRLICH, GERARD HANSHE, DAVID BROSGOL, JANICE BARRILLEAUX, PHILIP EYTAN, JARRETT LILIEN, RYAN WHOOLEY, LEWIS BATEMAN, DAVID BRILL, JON BROSNAHAN, DAN COSTANTINO, MARSHALL JENSEN, and EVAN PSAROPOULOS, and BRIAN BROOKS, | **[PROPOSED] FINAL ORDER AND JUDGMENT GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendants. | |

WHEREAS, the Court is advised that the Settling Parties, through their counsel, have agreed, subject to Court approval following notice to the Class and a hearing, to settle this Action upon the terms and conditions set forth in the Stipulation and Agreement of Settlement and Release dated April __, 2024 (the "Stipulation"), which was filed with the Court.[1]

WHEREAS, on _____, 2024, the Court entered its Order Preliminarily Approving Settlement and Providing for Notice, which preliminarily approved the Settlement and approved the form and manner of notice to the Class of the Settlement.

WHEREAS, said notice has been made to the Class and the Settlement Fairness Hearing has been held pursuant to the terms of the Order Preliminarily Approving Settlement and Providing for Notice.

---

[1]    All defined and capitalized terms herein shall have the same meaning as set forth in the Stipulation.

NOW, THEREFORE, based upon the Stipulation and all of the filings, records, and proceedings herein, and it appearing to the Court upon examination that the Settlement set forth in the Stipulation is fair, reasonable, and adequate, and upon the Settlement Fairness Hearing having been held after notice to the Class of the Settlement to determine if the Settlement is fair, reasonable, and adequate and whether the Judgment should be entered in this Action, **IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The provisions of the Stipulation, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

2.      This Court has jurisdiction of the subject matter of this Action and over all of the Settling Parties and all members of the Class, including all Class Members who did not timely file a request for exclusion from the Settlement Class by the relevant deadline pursuant to the Preliminary Approval Order.

3.      The form, content, and method of dissemination of notice given to the Class was adequate and reasonable, met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and 15 U.S.C. §78u-4(a)(7) (added to the Exchange Act by the Private Securities Litigation Reform Act of 1995), and constituted the best notice practicable under the circumstances, including individual notice to all Class Members who could be identified through reasonable effort.

4.      Notice, as given, complied with the requirements of federal law, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.

5.      The Settlement set forth in the Stipulation is fair, reasonable, and adequate.

(a)     The Settlement was negotiated at arm's length by Plaintiffs and Lead Counsel on behalf of the Class and by the Settling Defendants, all of whom were represented by highly experienced and skilled counsel.  The case settled only after: (1) an in-person mediation session conducted by a highly experienced mediator who was thoroughly familiar with this Action; (2) follow-up negotiations facilitated by the mediator; (3) the exchange of detailed mediation statements prior to the in-person mediation, which highlighted the factual and legal issues in dispute; (4) Lead Counsel's extensive investigation, which included, among other things, an extensive review of publicly available information about the Settling Defendants; (5) the drafting and filing of three detailed complaints; and (6) full briefing on the Settling Defendants' motion to dismiss the Action.  Accordingly, both Plaintiffs and the Settling Defendants were well-positioned to evaluate the settlement value of this Action.  The Stipulation has been entered into in good faith and is not collusive.

(b)     If the Settlement had not been achieved, both Plaintiffs and the Settling Defendants faced the expense, risk, and uncertainty of extended litigation, including a hearing and decision on the motion to dismiss, class certification, summary judgment, trial, post-trial motions, and appeals.  The Court takes no position on the merits of either Plaintiffs' or the Settling Defendants' arguments but notes these arguments as further evidence in support of the reasonableness of the Settlement.

6.      Plaintiffs and Lead Counsel have fairly and adequately represented the interests of the Class Members in connection with the Settlement.

7.      Plaintiffs, all Class Members, and the Settling Defendants are hereby bound by the terms of the Settlement set forth in the Stipulation.

8.      The Settlement shall be consummated in accordance with the terms and provisions of the Stipulation.  The Settling Parties are to bear their own costs, except as otherwise provided in the Stipulation.

9.      The Court hereby grants class certification for settlement purposes and appoints Johnny Johnson, Eirian Johnson, Ezra Boekweg, Shaun Roberts, Ken Sheppard, and Randy Roberts as Class Representatives and Scott+Scott Attorneys at Law LLP and Taylor-Copeland Law as Settlement Class Counsel.

10.     The Court hereby reaffirms its determination in the Preliminary Approval Order that the Settlement Class shall be composed of all persons and entities that were customers of Voyager as of July 5, 2022 and are entitled to receive future distributions under the Voyager Plan, excluding Ehrlich and Psaropoulos.

11.     Upon the Class Action Effective Date, except with respect to individual claims by persons who have validly and timely requested exclusion from the Class as listed in **Exhibit 1** hereto, all of the claims asserted in the First Amended Complaint ("Complaint") (ECF No. 62) and in the Action against the Settling Defendants are hereby dismissed with prejudice, without costs as to the Settling Parties, except as awarded under the Settlement Fund and approved by the Court.

12.     Upon the Class Action Effective Date, all Released Parties are released in accordance with the Stipulation, and as defined in the Stipulation, each of the Releasing Parties

4

are hereby deemed to have fully, finally, and forever waived, released, relinquished, and discharged each and every one of the Released Claims,[2] including Unknown Claims.[3]

---

[2] "Released Claims" means Releasing Plaintiffs' Claims and the Released Settling Defendants' Claims. "Releasing Plaintiffs' Claims" means any and all individual or class claims, demands, losses, rights, and causes of action of any nature whatsoever, known or Unknown Claims, whether arising under federal, state, common, or foreign law by the Releasing Plaintiff Parties against any of the Released Settling Defendant Parties and each and every former and current director, officer, and employee of Voyager, regardless of whether such director, officer, or employee was ever a named defendant in the Action, that have been or could have been asserted in the Action, or could in the future be asserted in any forum, domestic or foreign, or which arise out of, are based upon, or relate to in any way to (i) the purchase, sale, acquisition, or disposition of Voyager Earn Accounts and VGX Tokens and (ii) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions involved, set forth, alleged, or referred to, in the Action. For the avoidance of doubt, Releasing Plaintiffs' Claims do not include: (i) claims relating to the enforcement of the Settlement; (ii) any claims of Persons who submit a request for exclusion that is accepted by the Court; and (iii) any Releasing Plaintiffs' Claims against third parties, including those who acted in concert with or aided and abetted any wrongdoing by any Voyager director or officer. "Released Settling Defendants' Claims" means all claims and causes of action of any nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common, or foreign law, that Settling Defendants could have asserted against the Releasing Plaintiff Parties that arise out of, or relate in any way to, the institution, prosecution, or settlement of the claims in the Action, except for claims relating to the enforcement of the Settlement or any claims against any Person who submits a request for exclusion that is accepted by the Court.

[3] "Unknown Claims" means any Releasing Plaintiffs' Claims which Plaintiffs, any other Settlement Class Member, or any other Releasing Plaintiff Party does not know or suspect to exist in their favor at the time of the release of such claims, which, if known by them, might have affected their decision(s) with respect to this Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and any Released Settling Defendants' Claims which any Settling Defendant or any other Released Settling Defendant Party does not know or suspect to exist in their favor at the time of the release of such claims, which, if known by them might have affected their decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Class Action Effective Date of the Settlement, Plaintiffs and Settling Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Released Parties shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release,

5

13.     Upon the Class Action Effective Date, each of the Releasing Parties are hereby forever barred and enjoined from filing, commencing, instituting, prosecuting, or maintaining, either directly, indirectly, representatively, or in any other capacity, in this Court, or in any other court of law or equity, administrative forum, or arbitration tribunal, any claim, counterclaim, cross-claim, third-party claim, or other actions based upon, relating to, or arising out of, directly or indirectly, any of the Released Claims.

14.     Upon the Class Action Effective Date, pursuant to 15 U.S.C. §78u-4(f)(7)(A), this Order provides that every Person is permanently and forever barred and enjoined from filing, commencing, instituting, prosecuting, or maintaining, either directly, indirectly, representatively, or in any other capacity, in this Court, or in any other federal, foreign, state, or local court, forum or tribunal, any claim, counterclaim, cross-claim, third-party claim, or other actions based upon,

---

and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Releasing Plaintiff Parties and Released Settling Defendant Parties acknowledge that they may hereafter discover facts in addition to, or different from, those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Releasing Plaintiffs' Claims or Released Settling Defendants' Claims, but the Settling Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Class Action Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, heretofore have existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.

Plaintiffs and Settling Defendants acknowledge, and each of the other Settlement Class Members and each of the other Released Parties shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

relating to, or arising out of the Releasing Plaintiffs' Claims and/or the transactions and occurrences referred to in the Complaint, or in any other pleadings filed in this Action (including, without limitation, any claim or action seeking indemnification and/or contribution, however denominated), whether such claims are legal or equitable, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, or are asserted under federal, foreign, state, local, or common law, including, without limitation, a specific bar against all future claims for contribution arising out of the Action against Stephen Ehrlich and Evan Psaropoulos.

15.    Upon the Class Action Effective Date, each of the Released Settling Defendant Parties shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released Plaintiffs, Lead Counsel, and each and all of the Class Members from all Released Settling Defendants' Claims.

16.    All Class Members who have not made their objections to the Settlement in the manner provided in the Notice are deemed to have waived any objections by appeal, collateral attack, or otherwise.

17.    All Class Members who have failed to validly and timely submit Requests for Exclusion (requests to opt out) from the Class are bound by the terms and conditions of the Stipulation and this Judgment.

18.    The Requests for Exclusion, if any, by the persons or entities in **Exhibit 1** to this Judgment are accepted by the Court.

19.    Neither this Judgment, the Preliminary Approval Order, the Stipulation (including the exhibits thereto), nor any of the negotiations, documents, or proceedings connected with them shall be argued to be or offered or received:

(a)    Against any of the Released Settling Defendant Parties or their legal counsel as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Released Settling Defendant Parties with respect to the truth of any fact alleged in the Complaint or the Action, or the validity of any claim that has been, or could have been, asserted against any of the Settling Defendants in the Complaint or the Action, or the deficiency of any defense that has been, or could have been, asserted in the Action, or of any wrongdoing or liability by any of the Settling Defendants, or any liability, fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the Settling Defendants.

(b)    Against the Plaintiffs or any Settlement Class Member or Lead Counsel as evidence of, or construed as evidence of, any infirmity of the claims alleged by the Plaintiffs in the Complaint or the Action or of any lack of merit to the claims or the Complaint or the Action or of any bad faith, dilatory motive, or inadequate prosecution of the claims or the Complaint or the Action.

(c)    Against any of the Settling Defendants, the Plaintiffs, or any Settlement Class Member, or their respective legal counsel, as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Settling Defendants, the Plaintiffs, or any Settlement Class Member, or their respective legal counsel, with respect to any liability, negligence, fault, or wrongdoing as against any of the Settling Defendants, the Plaintiffs, or any Settlement Class Member, or their respective legal

8

counsel, in any other civil, criminal, or administrative action or proceeding, other than such actions or proceedings as may be necessary to effectuate the provisions of the Stipulation.

(d)     Against any of the Settling Defendants or their legal counsel as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that any of the Plaintiffs' claims have merit, or that any defenses asserted by the Settling Defendants are without merit, or that the Settlement Amount represents the amount which could or would have been received after any trial of the Action against them.

(e)     Against the Plaintiffs or any Settlement Class Member, or Lead Counsel, as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Plaintiffs or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by the Settling Defendants have any merit, or that damages recoverable in the Action would not have exceeded the Settlement Fund.

20.     Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Stipulation or the Settlement: (a) is or may be deemed to be, or may be used as, a presumption, concession, or admission of, or evidence of, the validity of any Releasing Plaintiffs' Claims or of any wrongdoing or liability of the Settling Defendants or the Released Settling Defendant Parties; or (b) is or may be deemed to be, or may be used as, a presumption, concession, or admission of, or evidence of, any fault or omission of any of the Settling Defendants or the Released Settling Defendant Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal; or (c) is or may

9

be deemed to be an admission or evidence that any claims asserted by the Plaintiffs, any Class Member, or Lead Counsel were not valid in any civil, criminal, or administrative proceeding.

21.    The Parties and other Released Parties, for the avoidance of doubt, may file or refer to this Judgment, the Stipulation, Preliminary Approval Order, and/or any Claim Form: (a) to effectuate the liability protections and/or releases granted hereunder or thereunder, including, without limitation, to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim; (b) to obtain a judgment reduction under applicable law; (c) to enforce any applicable insurance policies and any agreements relating thereto; or (d) to enforce the terms of the Stipulation and/or this Judgment.

22.    In the event that the Final Order Date or Class Action Effective Date does not occur in accordance with the terms and conditions set forth in the Stipulation, then this Order and Judgment shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of the Parties, and the Parties shall be deemed to have reverted *nunc pro tunc* to their respective positions as of January 31, 2024, and the Parties shall proceed in all respects as if the Stipulation had not been executed and the related orders had not been entered, without prejudice in any way from the negotiation, fact, or terms of the Settlement, and preserving all of their respective claims and defenses in the Action, and shall revert to their respective positions in the Action.  In such circumstances, the Parties shall thereafter work together to arrive at a mutually agreeable schedule for resuming litigation of the Action.

23.     Exclusive jurisdiction is hereby retained over the Parties for all matters relating to the Action, including the administration, interpretation, effectuation, or enforcement of the Stipulation, the Settlement contained therein, and this Judgment.

24.     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions in the Stipulation.

25.     Defendants have provided notification to all appropriate federal and state officials regarding the Settlement as required by 28 U.S.C. §1715.

26.     The Court finds that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

27.     The Court's orders entered during this Action relating to the confidentiality of information shall survive this Settlement.

28.     A separate order shall be entered regarding Lead Counsel's application for attorneys' fees and payment of expenses as allowed by the Court.  Such order shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.  Such order shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Class Action Effective Date.

29.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (i) implementation of the Settlement; (ii) any applications for attorneys' fees, costs, interest, and payment of expenses in the Action; (iii) all Parties for the purpose of construing, enforcing, and administering the Settlement and this Judgment; and (iv) other matters related or ancillary to the foregoing.

11

30.     There is no just reason for delay in the entry of this Judgment and immediate entry by the Clerk of the Court is respectfully directed.

IT IS SO ORDERED.

DATED: _____          _____
                                         P. Kevin Castel, U.S.D.J.
                                        SOUTHERN DISTRICT OF NEW YORK

# EXHIBIT 1

(Persons Excluded from the Class)

# EXHIBIT C

(Master Settlement Agreement)

*Execution Version*

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is entered into by and between Paul R. Hage, in his capacity as the Plan Administrator (the "**Plan Administrator**") of the Voyager Wind-Down Debtor (the "**Wind-Down Debtor**") under the *Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Index No. 22-10943, Doc. No. 1166-1] (as amended, modified, or supplemented from time to time), the *Amended Order (I) Approving the Second Amended Disclosure Statement and (II) Confirming the Third Amended Joint Plan of Voyager Digital Holdings, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Index No. 22-10943, Doc. No. 1159], and the Plan Administrator Agreement (collectively referred to herein as the "**Plan**"); XL Specialty Insurance Company ("**XL**"); Euclid Financial Institution Underwriters LLC ("**Euclid**"); Relm Insurance Ltd. ("**Relm,**" and together with Euclid and XL, the "**Insurers**"); Shaun Roberts, Ken Sheppard, Johnny Johnson, Eirian Johnson, Ezra Boekweg, and Randy Roberts, individually and on behalf of all others similarly situated (collectively, the "**Roberts Plaintiffs**"); Stephen Ehrlich ("**Ehrlich**"); and Evan Psaropoulos ("**Psaropoulos**") (each a "**Party**" and collectively the "**Parties**").

## RECITALS

WHEREAS, on July 5, 2022, Voyager Digital LLC, Voyager Digital Holdings, Inc., and Voyager Digital Ltd. (collectively, "**Voyager**" or the "**Debtors**") each filed petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), creating case numbers 22-10945, 22-10943, and 22-10944, respectively, jointly administered under case number 22-10943.

WHEREAS, the Wind-Down Debtor was created pursuant to the Plan, which the Bankruptcy Court confirmed on March 8, 2023.

WHEREAS, the Plan became effective on May 19, 2023 [Index No. 22-10943, Doc. No. 1405], whereupon the Debtors' assets vested in the Wind-Down Debtor, including any and all claims any of the Debtors may have against, among others, XL, Ehrlich, and Psaropoulos.  (*See* Plan, Art. IV.L).

WHEREAS, the Wind-Down Debtor is being administered by the Plan Administrator (as defined in the Plan).  (*See* Plan, Art.IV.H).

WHEREAS, XL issued to Voyager Digital Ltd. Policy Number ELU181214-22, with a policy period of February 22, 2022 through May 19, 2029, and an aggregate maximum limit of $5 million, including defense costs, providing Voyager's directors and officers with, among other things, Executive and Corporate Securities Liability insurance coverage (the "**Primary Policy**").

WHEREAS, Euclid issued to Voyager Policy Number EFl1203041-01 (the "**Euclid Excess Policy**") underwritten by Certain Underwriters at Lloyd's of London and Associated Industries Insurance Company, with an effective date of February 22, 2022 through February 22, 2023, providing Voyager's directors and officers with $2 million of excess coverage above the Primary Policy.

WHEREAS, Relm issued to Voyager Policy Number RILEDOA3392022 (the "**Relm Excess Policy**"), with an effective date of February 22, 2022 through February 22, 2023, providing Voyager's directors and officers with $3 million of excess coverage above the Primary Policy.

WHEREAS, XL issued to Voyager Policy Number ELU184180-23 (the "**XL Excess Policy**") with an effective date of February 22, 2023 through May 19, 2029, providing Voyager's directors and officers with $5 million of excess coverage above the Primary Policy.

WHEREAS, XL issued to Voyager Cornerstone A-Side Policy ELU184179-22 (the "**Cornerstone Policy,**" and together with the Primary Policy, the Euclid Excess Policy, the Relm Excess Policy, and the XL Excess Policy, the "**Voyager D&O Policies**"), for the exclusive benefit of Voyager's directors and officers, with an effective date of July 1, 2022 through May 19, 2029, and an aggregate maximum limit of liability of $10 million, including defense costs.

WHEREAS, on or about July 1, 2022, Voyager transferred to XL $15.6 million in premium payments for the Cornerstone Policy, the XL Excess Policy, and the Primary Policy to amend and extend the available coverage thereunder.

WHEREAS, the Debtors, Ehrlich, and Psaropoulos entered into a settlement resolving alleged claims by the Debtors against Ehrlich and Psaropoulos, providing for limited ongoing assistance to the Wind Down Debtors and to the Plan Administrator by Ehrlich and Psaropoulos and preserving the 3AC-Related Claim (as defined below) in favor of the Wind Down Debtor with limited recourse (the "**D&O Settlement**").

WHEREAS, the D&O Settlement is memorialized in the Plan.

WHEREAS, on or about June 23, 2023, the Plan Administrator provided Ehrlich and Psaropoulos with a draft complaint that he intended to file against them alleging breach of their fiduciary duties of care and good faith in connection with Voyager's loans to Three Arrows Capital Pte. Ltd., with a copy to the Insurers (the "**3AC-Related Claim**"). Ehrlich and Psaropoulos deny liability in connection with this claim.

WHEREAS, pursuant to the D&O Settlement, although the Plan Administrator alleged at least $650 million in damages in connection with the 3AC-Related Claim, the Plan Administrator's recovery on the 3AC-Related Claim with respect to Ehrlich and Psaropoulos is limited to the amounts available under the Voyager D&O Policies.

WHEREAS, the Plan Administrator also provided XL with a draft complaint that he intended to file against it to avoid and recover, among other things, as an alleged fraudulent conveyance the $15.6 million in premium payments that Voyager paid to XL shortly before Voyager's bankruptcy filing (the "**XL Fraudulent Conveyance Claims**").

WHEREAS, on or about November 9, 2022, the Roberts Plaintiffs filed Case No. 22-cv-9590 in the United States District Court for the Southern District of New York (the "**New York District Court**"), commencing a putative class action against, among others, certain of Voyager's executives, including Ehrlich and Psaropoulos, alleging that they violated federal and state securities laws by failing to register

(a) the Voyager platform's Earn accounts in which retail investors deposited and held cryptocurrency assets and (b) Voyager's VGX token (as amended, the "**Roberts Lawsuit**"), for which those executives have incurred defense costs that have been paid by XL under the Primary Policy. Ehrlich and Psaropoulos deny liability in connection with these claims.

WHEREAS, the putative class represented by the Roberts Plaintiffs largely overlaps with the Wind-Down Debtor Beneficiaries (defined in the Plan) who are entitled to distributions by the Plan Administrator under the Plan.

WHEREAS, Ehrlich has also been named a defendant in two additional lawsuits—*Commodity Futures Trading Commission v. Stephen Ehrlich*, Civil Action No. 1:23-cv-8962 (S.D.N.Y., filed October 12, 2023) (the "**CFTC Lawsuit**") and *Federal Trade Commission v. Voyager Digital, LLC, Voyager Digital Holdings, Inc., Voyager Digital Ltd., Stephen Ehrlich, and Francine Ehrlich*, Case No. 1:23-cv-08960 (S.D.N.Y., filed October 12, 2023) (the "**FTC Lawsuit**")—for which he is currently incurring defense costs that have been paid by XL under the Primary Policy and expects to continue to incur such costs. Ehrlich denies liability in connection with these lawsuits.

WHEREAS, Ehrlich and Psaropoulos have been named defendants in the lawsuit styled *Francine de Sousa v. Voyager Digital Ltd., Stephen Ehrlich, Philip Eytan, Evan Psaropoulos, Lewis Bateman, Krisztian Toth, Jennifer Ackart, Glenn Stevens, and Brian Brooks*, Court File No. CV-22-00683820-00CL (Superior Court of Ontario, filed July 6, 2022) (the "**de Sousa Lawsuit**"). Ehrlich and Psaropoulos deny liability in connection with this lawsuit.

WHEREAS, Ehrlich and Psaropoulos maintain that they may incur additional defense costs that would be covered by the Voyager D&O Policies if they are named in any additional lawsuits and/or investigations. Ehrlich, Psaropoulos, and other insured persons under the Voyager D&O Policies also assert that they may incur additional costs associated with their involvement as witnesses in other litigation.

WHEREAS, XL denies liability on the XL Fraudulent Conveyance Claims.

WHEREAS, Ehrlich and Psaropoulos deny liability on the 3AC-Related Claims, the Roberts Lawsuit, and all other suits and claims naming them as defendants and intend to defend against them vigorously.

WHEREAS, XL reports that it has received invoices for covered defense costs incurred through the end of 2023 totaling approximately $2.5 million, leaving $2.5 million in available limits under the Primary Policy.

WHEREAS, the Insurers maintain that they will pay covered claims on a first-come, first-served basis, so as not to be accused of favoring one insured over another.

WHEREAS, to avoid the uncertainty and costs associated with the protracted litigation of the XL Fraudulent Conveyance Claims, the 3AC-Related Claims, and the Roberts Lawsuit and further erosion of the available limits of the Voyager D&O Policies that will necessarily result therefrom, the Parties now wish to settle these disputes.

WHEREAS, the Plan Administrator will receive no less than $14.35 million as a result of the settlements discussed below, which will be available to distribute to Wind-Down Debtor Beneficiaries (as defined in the Plan).

NOW, THEREFORE, in consideration of the mutual promises, covenants, and agreements set forth in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.     **Effective Date**.  The Agreement shall be effective on the date on which the Agreement is signed and delivered by the last of the Parties to sign and deliver same (the "Effective Date").  On the Effective Date, the Parties shall each have the obligations specified below and the Roberts Plaintiffs will have the obligation to (i) provide the Plan Administrator, Ehrlich, and Psaropoulos with five (5) business days' notice of the draft motion for court approval of the settlement terms set forth in the Stipulation and Agreement of Settlement and Release in the Roberts Lawsuit, attached as **Exhibit A** hereto, and (ii) file and diligently prosecute the motion for court approval in the form approved by the Plan Administrator, Ehrlich, and Psaropoulos.

2.     **Null and Void Ab Initio**.  This Agreement shall become null and void *ab initio* should the Roberts Plaintiffs fail to obtain a final and non-appealable order from the New York District Court approving the settlement terms set forth in the attached **Exhibit A** (the "**Final Order**"), which terms are hereby incorporated by reference.  "**Final Order Date**," as used herein, shall be the first business day after the New York District Court's order approving the settlement outlined in the attached **Exhibit A** becomes a Final Order.

3.     **Settlement Payment/Obligations.**  In full and final settlement of the Roberts Lawsuit, the XL Fraudulent Conveyance Claims, the 3AC-Related Claim, and any disputes for payment under the Voyager D&O Policies, the Parties agree to the following:

     a.     XL will remit to the Plan Administrator within fifteen (15) business days of the Final Order Date, (i) the Cornerstone Policy limit of $10 million, (ii) the remaining $2.5 million limit of the Primary Policy, less any Interim Defense Expenses, as that term is defined below in Paragraph 3.h, paid by XL, along with an accounting of amounts paid under the Primary Policy, and (iii) the additional sum of $1 million (collectively, the "**XL Payment**").

     b.     Relm will remit to the Plan Administrator within five (5) business days of the Final Order Date, $3 million (the "**Relm Payment**"), which constitutes the limits of the Relm Excess Policy.  Relm shall remit these amounts regardless of any additional fees and costs its insureds incurred under the Policies.

     c.     Euclid will remit to the Plan Administrator within five (5) business days of the Final Order Date, $2 million (the "**Euclid Payment**," and together with the XL Payment and the Relm Payment, the "**Insurance Payments**"), which constitutes the limits of the Euclid Excess Policy.  Euclid shall remit these amounts regardless of any additional fees and costs its insureds incurred under the Policies.

d.    The Roberts Plaintiffs agree to cap their attorneys' fees and costs application and their recovery of fees and costs in the Roberts Lawsuit to no greater than $1.4 million (the "**Attorneys' Fees/Costs Cap**").  If the New York District Court awards the Roberts Plaintiffs an amount that is less than $1.4 million in attorneys' fees and costs, then the Roberts Plaintiffs shall only be entitled to recover from the Plan Administrator  the amount awarded by the New York District Court (the "**Roberts Attorneys' Fees/Costs Award**"), and the Plan Administrator shall be entitled to distribute the difference to Wind-Down Debtor Beneficiaries (defined in the Plan) pursuant to the Plan and the terms of this Agreement.  The Plan Administrator shall remit, directly to the undersigned counsel for the Roberts Plaintiffs, the amounts owed in connection with the Attorneys' Fees/Costs Award (subject to the Attorneys' Fees/Costs Cap), within five (5) business days following the later of: (i) the date the Roberts Attorneys' Fees/Costs Award becomes final and non-appealable, (ii) the date that the Plan Administrator has received the Insurance Payments owed to him from the Insurers, and (iii) the Final Order Date.

e.    The Roberts Plaintiffs shall not be entitled to any payments of fees and costs in excess of the Attorneys' Fees/Costs Cap, even for costs and fees they incur in obtaining court approval and a Final Order in connection with the settlement outlined in **Exhibit A**.  No Party, other than the Roberts Plaintiffs, shall have any responsibility for costs incurred by the Roberts Plaintiffs in obtaining court approval and a Final Order in connection with the settlement outlined in **Exhibit A**, including the costs of providing all required notices.

f.    In exchange for the Attorneys Fees'/Costs Cap, the other Parties agree not to object to any claim for attorneys' fees and costs made by the Roberts Plaintiffs in the New York District Court.

g.    The Plan Administrator shall hold back from the Insurance Payments it receives the sum of  $2.75 million less any Interim Defense Expenses (as defined below) paid by XL (the "**Insurance Hold-Back**") to pay any covered Defense Expenses (as defined in the Primary Policy), including non-party witness fees not to exceed $50,000 per witness, per appearance, incurred by Ehrlich, Psaropoulos, or any other Insured (as defined in the Primary Policy), provided timely and appropriate documentation of such Defense Expenses are provided to the Plan Administrator and the Plan Administrator determines that payment of such Defense Expenses would be consistent with the criteria previously used by XL to evaluate and pay such Defense Expenses.  The Plan Administrator shall deposit and maintain the Insurance Hold-Bank in a segregated account, subject to section 3(i) of this Agreement.  Upon request of any Insured or their counsel, the Plan Administrator shall provide an accounting of the total amount of all Defense Expenses paid out of the Insurance Hold Back.

h.    Notwithstanding the foregoing, XL may pay Defense Expenses incurred by the Insureds under the Primary Policy between January 1, 2024 and the Final Order

Date ("**Interim Defense Expenses**"). Any payment of Interim Defense Expenses will reduce the Insurance Hold-Back on a dollar-for-dollar basis. In no event shall XL's payment of Interim Defense Expenses exceed the remaining limit of the Primary Policy.

i. The Roberts Plaintiffs shall certify a settlement class (the "**Settlement Class**") co-terminus with the Voyager customers who are entitled to distributions by the Plan Administrator under the Plan, *i.e.*, the Wind-Down Debtor Beneficiaries (defined in the Plan). In consideration of the settlement and the releases provided by the Settlement Class, the Settlement Class shall receive $5.1 million (less approximately $30,000) of the Insurance Payments (the "**Roberts Settlement Class Payment**"), which shall be distributed to eligible Class Members as soon as practicable by the Plan Administrator in accordance with the procedures set forth in the Plan and the Settlement set forth in Exhibit A, which procedures in turn describe the mechanics of crediting cash held for the benefit of Voyager Digital LLC creditors (virtually all of whom are also Settlement Class members). In an effort to maximize each Settlement Class member's recovery and minimize the administration expenses associated with distributing the Roberts Settlement Class Payment to eligible Class Members, the Plan Administrator intends to distribute the Roberts Settlement Class Payment to eligible Class Members at the same time as the Wind-Down Debtor makes its next distribution to Voyager Digital, LLC account holders and trade creditors, the timing of which depends on the resolution of certain pending litigation. The Roberts Plaintiffs agree that, in order to minimize distribution and claims administration costs in connection with the Roberts Settlement Class Payment, the Plan Administrator (in its capacity as Claims Administrator under the Settlement set forth in Exhibit A), will distribute the Roberts Settlement Class Payment to eligible Class Members at the same time the Plan Administrator makes a larger distribution to Wind-Down Debtor Beneficiaries (as defined in the Plan), and further agree that each such payment (distribution) to an eligible Class Member can be combined (and made as part of one lump sum payment) with whatever payment that such eligible Class Member will also be eligible to receive in their capacity as a Wind-Down Debtor Beneficiary.

j. If any funds remain from the Insurance Hold-Back after the Plan Administrator processes and pays all claims for Defense Expenses incurred through the second anniversary of the Final Order Date (including any such claims that are the subject of a Defense Expense Dispute (as defined herein)), all rights and entitlement to such funds shall immediately and irrevocably revert to the Plan Administrator for administration and distribution in accordance with the procedures governing distributions set forth in the Plan, with the exception that Ehrlich and Psaropoulos will not receive a distribution, as they have waived any such entitlement.

4.     **Releases.**

a.     **Plan Administrator Releases**.  In consideration of the promises set forth in this Agreement, effective as of the Final Order Date and the Plan Administrator's receipt of the Insurance Payments required to be paid under this Agreement, the Plan Administrator, for himself and for the Wind Down Debtor, fully and forever releases, acquits, and discharges: (i) the Insurers, their respective successors and predecessors, subsidiaries, affiliates and related companies, present and former employees, managers, officials, insurers, directors, officers, Board members, agents, representatives, and attorneys, from any and all claims, demands, rights, costs, losses, suits, actions and causes of action, obligations, damages, or expenses of any nature, known or unknown that involve, arise from, or relate in any way to payments under the Voyager D&O Policies and/or the XL Fraudulent Conveyance Claims; and (ii) Ehrlich and Psaropoulos, and their respective successors and predecessors, heirs, agents, representatives, and attorneys, from any and all claims, demands, rights, costs, losses, suits, actions and causes of action, obligations, damages, or expenses of any nature, known or unknown, that involve, arise from, or relate in any way to (a) the 3AC-Related Claim; (b) the XL Fraudulent Conveyance Claim and (c) the Roberts Lawsuit (collectively, the "**Plan Administrator Released Claims**").  The Plan Administrator Released Claims expressly exclude any action or claim to enforce the terms of this Agreement.  For avoidance of doubt, nothing herein or in this Agreement in any way affects the terms and conditions of the releases given to Ehrlich and Psaropoulos contained in the Plan, which terms and conditions continue to govern unchanged, including the limitation set forth in Article IV.G of the Voyager Plan regarding the releases related to the sworn financial disclosure statements provided by Ehrlich and Psaropoulos.

b.     **Ehrlich and Psaropoulos Releases.**  In consideration of the promises set forth in this Agreement, effective as of the Final Order Date and the Plan Administrator's receipt of the Insurance Payments required to be paid under this Agreement, Ehrlich and Psaropoulos  fully and forever release, acquit, and discharge the Insurers, the Plan Administrator, their respective successors and predecessors, subsidiaries, affiliates and related companies, present and former employees, managers, officials, insurers, directors, officers, Board members, agents, representatives, and attorneys, from any and all claims, demands, rights, costs, losses, suits, actions and causes of action, obligations, damages, or expenses of any nature, known or unknown that involve, arise from, or relate in any way to (a) the 3AC-Related Claim; (b) the XL Fraudulent Conveyance Claim; (c) the Roberts Lawsuit; (d) any claim for misrepresentations, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, or damages of any kind whatsoever arising out of or relating to claims for coverage for the matters listed in (a)-(c) of this paragraph and the de Sousa, FTC and CFTC Lawsuits; or (e) payments to date under the Voyager D&O Policies (the "**Ehrlich/Psaropoulos Released Claims**").  The Ehrlich/Psaropoulos

Released Claims expressly exclude any action or claim to enforce the terms of this Agreement and any claims for reimbursement of Defense Expenses directed to the Insurance Hold-Back in accordance with this Agreement. The Ehrlich/Psaropoulos Released Claims also expressly exclude any and all defenses Ehrlich and/or Psaropoulos have or may have on account of any potential claims or causes of action that may be restored to the Plan Administrator pursuant to the terms of the D&O Settlement.

c.    **Settlement Class Releases.**  In consideration of the promises set forth in this Agreement, effective as of the Final Order Date and the Plan Administrator's receipt (on behalf of the Settlement Class) of the Insurance Payments required to be paid under this Agreement, plaintiffs Shaun Roberts, Ken Sheppard, Johnny Johnson, Eirian Johnson, Ezra Boekweg, and Randy Roberts, individually and by operation of law on behalf of all other members of the Settlement Class, shall fully and forever release, acquit, and discharge each and every director, officer, and employee of Voyager, including Ehrlich and Psaropoulos, regardless of whether such director, officer, or employee was ever a named defendant in the Roberts Lawsuit, and the Insurers, their respective assigns, heirs, executors, administrators, trustees, successors and predecessors, subsidiaries, affiliated and related companies, present and former employees, managers, officials, insurers, directors, officers, Board members, agents, representatives, and attorneys, from any and all claims, demands, rights, costs, losses, suits, actions and causes of action, obligations, damages, or expenses of any nature, known or unknown, that involve, arise from, or relate in any way to the subject matter of the Roberts Lawsuit  (the "**Settlement Class Released Claims**").  The Settlement Class Released Claims expressly exclude any action or claim to enforce the terms of this Agreement. Further, nothing in this Agreement or the release granted by the Settlement Class shall affect any Voyager customer claims against third parties who acted in concert with or aided and abetted any wrongdoing by any Voyager director or officer.

d.    **Insurer Releases**.  In consideration of the promises set forth in this Agreement, effective as of the Final Order Date and the Plan Administrator's receipt of the Insurance Payments required to be paid under this Agreement,  the Insurers  fully and forever release, acquit, and discharge the Plan Administrator, Shaun Roberts, Ken Sheppard, Johnny Johnson, Eirian Johnson, Ezra Boekweg, and Randy Roberts, their respective assigns, heirs, executors, administrators, trustees, successors and predecessors, subsidiaries, affiliates and related companies, present and former employees, managers, officials, insurers, directors, officers, Board members, agents, representatives, and attorneys, from any and all claims, demands, rights, costs, losses, suits, actions and causes of action, obligations, damages, or expenses of any nature, known or unknown, that involve, arise from, or relate in any way to payments under the Voyager D&O Policies; and the Insurers fully and forever release, acquit, and discharge Ehrlich and Psaropoulos and their respective assigns, heirs, executors, administrators, trustees, successors and predecessors, subsidiaries, affiliates and related companies, present and former employees,

managers, officials, insurers, directors, officers, Board members, agents, representatives, and attorneys, from any and all claims, demands, rights, costs, losses, suits, actions and causes of action, obligations, damages, or expenses of any nature, known or unknown, that involve, arise from, or relate in any way to (a) the 3AC-Related Claim; (b) the XL Fraudulent Conveyance Claim; (c) the Roberts Lawsuit; (d) any claim for misrepresentations, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, or damages of any kind whatsoever arising out of or relating to claims for coverage for the matters listed in (a)-(c) of this paragraph and the de Sousa, FTC and CFTC Lawsuits; or (e) payments to date under the Voyager D&O Policies (the "**Insurer Released Claims**").  The Insurer Released Claims expressly exclude any action or claim to enforce the terms of this Agreement.

5.    **No Admissions**.  Nothing contained in this Agreement is to be construed as an admission of liability by any Party.  Any such liability is expressly denied.  Nothing contained in this Agreement, nor anything said or communicated in the course of negotiating this Agreement may be offered in any proceeding as evidence of any liability or wrongdoing by any Party; ***provided***, ***however***, this Agreement and all communications and statements made in connection with this Agreement may be introduced in any proceeding to enforce any of the terms of this Agreement.

6.    **Amendment, Modification, and Waiver**.  This Agreement may be amended, modified, and supplemented only by a written instrument signed by each Party.

7.    **Representation by Counsel; Mutual Drafting**.  The Parties agree that they have been represented by counsel during the negotiation and execution of this Agreement and have participated jointly in the negotiation and drafting of this Agreement and hereby waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.  If an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

8.    **Construction**.  The captions and headings of the paragraphs, subparagraphs, and sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

9.    **Dispute Resolution and Governing Law**.  Any dispute relating to this Agreement, except a dispute related to the payment of Interim Defense Expenses or Defense Expenses from the Insurance Hold-Back (a "**Defense Expenses Dispute**"), shall be governed by and construed in accordance with the laws of the State of New York, including any applicable statutes of limitation, without regard to any otherwise applicable principles of conflicts of law or choice-of-law rules that would result in the application of the substantive or procedural rules or law of any other jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction to decide and issue final orders on all matters related to this Agreement, except a Defense Expenses Dispute, and excepting any matters arising under the Stipulation of Settlement

or the enforcement or administration thereof (which shall be under the exclusive jurisdiction of the New York District Court).  It is understood that a dispute that a payment of Defense Expenses is not allowed because it will exceed the $2.75 million Insurance Hold-Back is not a Defense Expenses Dispute.

Any Defense Expenses Dispute that cannot be resolved by negotiation between the relevant Parties within fourteen (14) days of a Party having given notice to the other Party that a dispute has arisen shall be submitted to David M. Murphy of Philips ADR Enterprises (PADRE) for resolution on a binding, final, non-appealable, expedited basis.

10.     **Successors and Assigns**.  This Agreement shall be binding on and shall inure to the benefit of the Parties and their respective successors and assigns; ***provided***, ***however***, that this Agreement is not assignable by any Party without the prior written consent of the other Parties.  Any attempted assignment in contravention of the foregoing shall be null and void and of no force or effect.

11.     **Duty to Cooperate in Good Faith**.  Recognizing that (as previously set forth above) this Agreement shall become null and void *ab initio* should the Roberts Plaintiffs fail to obtain the Final Order from the New York District Court approving the settlement terms set forth in the attached **Exhibit A**, all Parties hereto agree to cooperate in good faith and to take such steps as may be reasonably necessary to facilitate the consummation of the settlement set forth in **Exhibit A**.

12.     **Fees and Expenses**.  All fees, costs, and expenses incurred in connection with the negotiation, documentation, execution, and delivery of this Agreement, shall be borne exclusively by the respective Party incurring such fees, costs, or expenses.

13.     **Reliance**.  Each Party acknowledges that, in executing this Agreement, it is not relying on and has not relied on any representation or statement by any other Party.

14.     **Entire Agreement; Integration**.  This Agreement represents the entire agreement between the Parties regarding the subject matter hereof and supersedes all prior negotiations, representations, or agreements between the Parties, either written or oral, in respect of such subject matter.

15.     **Severability**.  If any section, paragraph, subparagraph, or sentence within this Agreement is declared by a court of competent jurisdiction to be void or unenforceable, such portion shall be deemed severed from the remainder of this Agreement, and the balance of this Agreement shall remain in full force and effect.

16.     **Counterparts**.  Delivery of executed signature pages in one or more counterparts (including via facsimile or the electronic exchange of portable document format [PDF] copies) all of which shall together constitute one and the same instrument and shall be sufficient to render this Agreement effective in accordance with its terms.

[Signatures on following pages]

**VOYAGER WIND-DOWN DEBTOR**

By: Paul R. Hage

Date April 3, 2024

Its: Plan Administrator


**XL SPECIALTY INSURANCE COMPANY**

By: _____

Date _____

Its: _____


**EUCLID FINANCIAL INSTITUTION UNDERWRITERS LLC**

By: _____

Date _____

Its: _____


**RELM INSURANCE LTD.**

By: _____

Date _____

Its: _____


**SHAUN ROBERTS** _____

Date _____


**KEN SHEPPARD** _____

Date _____

11

*Execution Version*

**VOYAGER WIND-DOWN DEBTOR**

_____          _____
By:  Paul R. Hage                        Date
Its:  Plan Administrator


**XL SPECIALTY INSURANCE
COMPANY**

_____          _____
By:  Patricia Melly                      Date    4/3/24
Its:  VP-Claims


**EUCLID FINANCIAL INSTITUTION
UNDERWRITERS LLC**

_____          _____
By:                                      Date
Its:


**RELM INSURANCE LTD.**

_____          _____
By:                                      Date
Its:


_____          _____
**SHAUN ROBERTS**                        Date


_____          _____
**KEN SHEPPARD**                         Date

11

*Execution Version*

**VOYAGER WIND-DOWN DEBTOR**

By:  Paul R. Hage                                    Date
Its:  Plan Administrator


**XL SPECIALTY INSURANCE
COMPANY**

By:                                                  Date
Its:


**EUCLID FINANCIAL INSTITUTION
UNDERWRITERS LLC**

By:  ERIC LEVINE                                     4/3/24
Its:  CLAIMS COUNSEL                                 Date


**RELM INSURANCE LTD.**

By:                                                  Date
Its:


**SHAUN ROBERTS**                                    Date


**KEN SHEPPARD**                                     Date


11

**VOYAGER WIND-DOWN DEBTOR**

_____          _____
By:  Paul R. Hage                                             Date
Its:  Plan Administrator


**XL SPECIALTY INSURANCE
COMPANY**

_____          _____
By:                                                                  Date
Its:


**EUCLID FINANCIAL INSTITUTION
UNDERWRITERS LLC**

_____          _____
By:                                                                  Date
Its:


**RELM INSURANCE LTD.**

_____          4/3/24_____
By:     Eric Roberts                                        Date
Its:


_____          _____
**SHAUN ROBERTS**                                     Date


_____          _____
**KEN SHEPPARD**                                       Date

11

*Execution Version*

**VOYAGER WIND-DOWN DEBTOR**

_____          _____
By:  Paul R. Hage                        Date
Its:   Plan Administrator


**XL SPECIALTY INSURANCE
COMPANY**

_____        _____
By:                                      Date
Its:


**EUCLID FINANCIAL INSTITUTION
UNDERWRITERS LLC**

_____          _____
By:                                      Date
Its:


**RELM INSURANCE LTD.**

_____          _____
By:                                      Date
Its:

_____          _____
**SHAUN ROBERTS**                        Date

_____          _____
**KEN SHEPPARD**                          Date

*Execution Version*

**JOHNNY JOHNSON**                                        Date

**EIRIAN JOHNSON**                                        Date

**EZRA BOEKWEG**                                          Date

**RANDY ROBERTS**                                         Date

**STEPHEN EHRLICH**                                       Date

**EVAN PSAROPOULOS**                                      Date

12

*Execution Version*

 

**JOHNNY JOHNSON**                  Date

 

**EIRIAN JOHNSON**                  Date

 

**EZRA BOEKWEG**                  Date

 

**RANDY ROBERTS**                  Date

DocuSigned by:

*Stephen Ehrlich*                  4/3/2024

307777A3E0CF44A...

**STEPHEN EHRLICH**                  Date

 

**EVAN PSAROPOULOS**                  Date

12

Execution Version

| | |
|---|---|
| JOHNNY JOHNSON | Date |

| | |
|---|---|
| EIRIAN JOHNSON | Date |

| | |
|---|---|
| EZRA BOEKWEG | Date |

| | |
|---|---|
| RANDY ROBERTS | Date |

| | |
|---|---|
| STEPHEN EHRLICH | Date |

| | |
|---|---|
| EVAN PSAROPOULOS | 4\3\24 |
| | Date |