**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHAUN ROBERTS and KEN SHEPPARD, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-09590-PKC |
| | CLASS ACTION |
| Plaintiff, | |
| | Judge: Hon. P. Kevin Castel |
| v. | Date:  October 8, 2024 |
| | Time:  2:00 PM |
| STEPHEN EHRLICH, and EVAN PSAROPOULOS, | |
| Defendants. | |

**DECLARATION OF SEAN T. MASSON IN SUPPORT OF MOTIONS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND (2) AWARD OF ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND AWARD TO PLAINTIFFS FOR THEIR COSTS AND EXPENSES**

I, Sean T. Masson, declare as follows pursuant to 28 U.S.C. §1746:

1.      I am a partner at Scott+Scott Attorneys at Law LLP ("Scott+Scott"). Scott+Scott, along with Taylor-Copeland Law was appointed Lead Counsel (together, "Lead Counsel") for Lead Plaintiffs Johnny Johnson, Eirian Johnson, and Ezra Boekweg in the above-captioned securities class action (the "Action").[1] I have personal knowledge of the matters set forth herein based on my participation in the prosecution and settlement of the claims asserted on behalf of the Settlement Class in this Action.

2.      I submit this declaration in support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Motion"); and (2) Plaintiffs' and Lead Counsel's Motion for Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Plaintiffs for their Costs and Expenses ("Fee and Expense Motion").

## I.      PRELIMINARY STATEMENT

3.      After more than a year of hard-fought litigation, Plaintiffs and Lead Counsel have succeeded in obtaining a recovery for the Class of $6,500,000.

4.      The accompanying Final Approval and Fee and Expense Motions come after the Court preliminarily approved the settlement and ordered notice thereof to the Class. Order Preliminarily Approving Settlement and Providing for Notice, ECF No. 90 ("Preliminary Approval Order"). As set forth in those Motions, the Court-ordered notice program has been completed, informing Class Members of the proposed settlement, as well as its terms, their rights

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as those set forth in the Stipulation and Agreement of Settlement and Release (the "Stipulation"), dated April 3, 2024 (ECF No. 83-1). Unless otherwise noted, citations to "Ex. __" herein refer to exhibits attached to the Declaration of Sean T. Masson in Support of Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation and (2) Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Plaintiffs for their Costs and Expenses ("Masson Declaration").

and options in light of the settlement, and key dates for the effectuation of those rights. *See* Certificate of Service – ECF No. 90.

5.      Plaintiffs and Lead Counsel respectfully submit that the proposed Settlement is an excellent result. As explained herein, and in the accompanying Motions, the proposed Settlement was reached after the Settling Defendants' motion to dismiss or compel arbitration was fully briefed and pending.  Therefore, Plaintiffs and Lead Counsel have a clear understanding of the strengths and weaknesses of the claims.

6.      Also militating in favor of the Settlement is the fact that it was accomplished through extensive arm's-length settlement discussions, including an all day, in-person mediation session and months of follow up discussions, all facilitated by an experienced mediator, David M. Murphy, Esq. ("the Mediator").

7.      Each Plaintiff supports the Settlement, as set forth in the attached Declarations of Plaintiffs in Support of Motions for: (1) Final Approval of Class Action Settlement and Plan of Allocation; and (2) Award of Attorneys' Fees, Payment of Litigation Expenses, and Award to Plaintiffs for their Costs and Expenses ("Plaintiff Declarations").  *See* Ex. 1.

8.      For all of the reasons set forth herein, and in light of the result obtained, notwithstanding the significant risks of the litigation detailed below, Plaintiffs and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable, and adequate in all respects and that the Court should enter final approval of same.

9.      In addition to seeking final approval of the Settlement, Plaintiffs also seek approval of the proposed Plan of Allocation.  The Plan of Allocation, which was developed by Lead Counsel, in conjunction with the Plan Administrator, allocates the proceeds of the Settlement – net

of any Court-approved fees and expenses – in a *pro rata* fashion among the Settlement Class. *See* Notice at 5. The Plan of Allocation is fair and reasonable and should likewise be approved.

10.     Finally, Lead Counsel respectfully submits that the requested fee of 20% of the Settlement Fund, for their work in this case is fair and reasonable and merits approval as well. This fee request is consistent with awards in similar securities class actions, as well as the nature and extent of the work Lead Counsel performed here. Moreover, this award is below the lodestar value of Lead Counsel's time dedicated to this case and represents a negative multiplier of approximately 0.85. Lead Counsel also seeks payment of its litigation expenses totaling $40,000 for costs necessary to prosecute the Action, including experts, mediation, legal research, electronic discovery support, and case-related travel. Plaintiffs support these requests. In addition, Plaintiffs request an aggregate award of $60,000 ($10,000 per named Plaintiff) for the work they performed and the expenses they incurred in representing and serving the interests of the Settlement Class, an amount also within the range typically granted to plaintiffs in similar class actions.

## II.    HISTORY OF THE ACTION AND SUMMARY OF THE WORK PERFORMED BY LEAD COUNSEL

### a.    Summary of the Allegations

11.     Voyager was a financial services company that generated revenue through cryptocurrency trading, lending, borrowing, and the sale of interest bearing "Earn Program" accounts ("Earn Accounts") and Voyager tokens ("VGX" or "VGX Tokens"). Plaintiffs broadly allege that the Earn Accounts and VGX tokens were unregistered securities that were sold in violation of the registration provisions of the Securities Act of 1933 as well as the New Jersey Uniform Securities Law and the California Corporate Securities Law of 1968.

12.     Plaintiffs alleged that Voyager offered and sold Voyager Earn Accounts to retail investors, through which those investors lent crypto assets to Voyager in exchange for Voyager's

promise to provide a variable monthly interest payment. Voyager generated the interest paid out to Earn Account investors by deploying their and its assets in various ways, including loans of crypto assets made to purported institutional and corporate borrowers, lending U.S. dollars and stablecoins to retail investors, and by investing in other highly speculative cryptocurrency ventures. Voyager also pooled these cryptocurrencies together to fund its lending operations and proprietary trading.

13.     In exchange for their investments in the Voyager Earn Accounts and VGX Tokens, investors were promised above-market interest rates that were paid monthly in cryptocurrency. Plaintiffs alleged that Voyager's marketing, however, was based upon false representations and other deceptive conduct.

14.     Plaintiffs further alleged that certain Defendants have engaged in securities fraud in violation of the Securities Exchange Act of 1934 ("Exchange Act"). Defendants made a series of misleading statements that induced unsuspecting investors to purchase the relevant Voyager Financial Products at inflated rates. Plaintiffs alleged that Defendants engaged in, and financially benefitted from, a multifaceted scheme that relied on materially false statements and/or omissions about Voyager's due diligence practices.

15.     At the direction of the Defendants, Plaintiffs alleged that Voyager's business model was that of a feeder fund, soliciting retail investors and investing their money with little or no due diligence in cryptocurrency investment funds like Alameda Research and Three Arrows Capital. Plaintiffs alleged that Defendants heavily funded entities like 3AC and Alameda, and fueled the misconduct that occurred there, which resulted in 3AC and Alameda each in bankruptcy and the institution of criminal charges.

16.    In mid-2022, the price of cryptocurrency assets declined across the board as did demand for new cryptocurrency investments.  Plaintiffs alleged that Defendants had many internal indications of the upcoming serious financial issues – but, up to four days before suspending customers' accounts, continued to indicate to Plaintiffs and Class members that the Company was in good standing and that the Class members' investments were safe.

17.    Between March 29, 2022 and April 13, 2022, Voyager received cease and desist orders regarding the "Voyager Earn Program" from the state securities boards of Indiana, Kentucky, New Jersey, Oklahoma, and South Carolina, and show cause orders from the state securities boards of Alabama, Texas, Vermont, and Washington.  The State of Kentucky forbade Voyager from using its "Voyager Earn Program" in its State.  The SEC likewise began an investigation focused on whether Voyager Financial Products were unregistered securities.

18.    On July 1, 2022, Voyager suspended withdrawals from its platform and on July 6, 2022, Voyager filed for Chapter 11 bankruptcy.

19.    Settling Defendants have denied, and continue to deny, all of Plaintiffs' allegations, and any liability therefrom.

**b.  Procedural History of the Action**

20.    On November 9, 2022, Plaintiffs Shaun Roberts and Ken Sheppard filed a putative class action complaint in the United States District Court for the Southern District of New York against Ehrlich, as well as other former officers/directors of Voyager: Janice Barrilleaux, Brian Brooks, David Brosgol, Philip Eytan, Gerard Hanshe, and Jarrett Lilien (collectively, the "Original Defendants"). ECF No. 1. The lawsuit was brought on behalf of persons and entities that purchased Voyager Earn Accounts ("Earn Accounts") and the VGX tokens between January 1, 2020 and November 9, 2022, inclusive, and alleged violations of Sections 5, 12(a)(1), and 15 of the

Securities Act of 1933, Sections 25110, 25503, and 25504 of the California Corporations Code, and Sections 49:3-60 and 49:3-71-D of the New Jersey Uniform Securities Law, as well as common law claims for unjust enrichment/restitution.

21.     On January 10, 2023, Lead Plaintiffs Johnny Johnson, Eirian Johnson, and Ezra Boekweg moved pursuant to the PSLRA to be appointed as Lead Plaintiffs and for Scott+Scott and Taylor-Copeland law to be appointed as Lead Counsel. Following oral argument, on April 19, 2023, the Court granted the motion. ECF No. 49.

22.     On May 26, 2023, Plaintiffs filed the Consolidated Class Action Complaint ("CCAC"), which added Psaropoulos, Ryan Whooley, Lewis Bateman, David Brill, Jon Brosnahan, Dan Costantino, and Marshall Jensen as named defendants (together with the Original Defendants, the ("Defendants"). ECF No. 52. The CCAC was brought on behalf of all persons and entities that purchased Voyager Earn Accounts or VGX tokens between January 1, 2020 and May 26, 2023, inclusive, and added claims for violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder for allegedly making false and misleading statements. The CCAC also asserted a claim for violations of Section 10(b) of the Exchange Act for scheme liability from March 1, 2022 through July 1, 2022.

23.     On August 15, 2023, Defendants filed a letter motion for leave to file a motion to dismiss the CCAC in favor of arbitration and for failure to state a claim. ECF No. 59. On August 21, 2023, Plaintiffs filed their letter in response to Defendants' pre-motion letter and requested leave of Court to file a further amended complaint. ECF No. 60.

24.     On September 15, 2023, Plaintiffs filed the First Amended Complaint (the "FAC"). ECF No. 62. On September 29, 2023, Defendants filed their pre-motion letter for leave to file a

motion(s) to dismiss. ECF No. 63. On October 5, 2023, Plaintiffs filed their letter in response to Defendants' pre-motion letter. ECF No. 64.

25.     On November 10, 2023, Defendants filed their motion to dismiss in favor of arbitration and for failure to state a claim. ECF No. 67.  Defendants argued that: (i) Plaintiffs' claims were barred due to a binding arbitration agreement; (ii) Plaintiffs' claims were barred by the statute of repose and statute of limitations; (iii) Defendants were not statutory sellers and did not successfully solicit Plaintiffs' purchases; (iv) the FAC failed to adequately allege scheme liability; (v) the FAC failed to allege a fraudulent misrepresentation or omission; (iv) the FAC failed to plead a strong inference of scienter; (vii) Plaintiffs failed to adequately allege reliance; (vii) the FAC failed to adequately allege loss causation; (viii) the control person claims failed; and (ix) Plaintiff's state law claims failed.  In sum, nearly every single element of every claim was challenged.

26.     On December 12, 2023, Plaintiffs filed their memorandum of law in opposition to Defendants' motion to dismiss. ECF No. 71.

27.     On January 10, 2024, Defendants filed their reply in support of their motion to dismiss. ECF No. 72.

### c. Plaintiffs and Lead Counsel participated in an All-Day Mediation Session that Culminated in the Proposed Settlement

28.     In the midst of briefing Defendants' motion to dismiss letters, the parties began discussing the potential for mediation with the bankruptcy Plan Administrator.  The parties, along with the Plan Administrator and relevant insurers, eventually agreed to retain David M. Murphy, Esq. of Philips ADR Enterprises, a mediator with extensive experience in complex litigation, including securities class actions and bankruptcies.

29.     In advance of the mediation, the Parties exchanged detailed mediation statements (and exhibits thereto) highlighting the factual and legal issues in dispute and had pre-mediation calls and emails with the Mediator.  In connection with the mediation, Lead Counsel also consulted with a damages consultant and industry expert.

30.     On November 20, 2023, the Parties, the Plan Administrator, and the Defendants' insurers held an in-person mediation session with the Mediator in New York City to negotiate a global settlement of the Action as well as certain claims asserted by the Plan Administrator that, like the Action, implicated the Defendants' D&O insurance.

31.     Though the parties did not reach an agreement to settle the Action or reach a global resolution at that mediation session, they continued their negotiations through the Mediator in the months thereafter while they simultaneously litigated the Action, as described above.

32.     On Monday, January 15, 2024, the Mediator issued a "mediator's recommendation" to settle the Action for $6,500,000, inclusive of Lead Counsel's attorneys' fees and expenses, which the Settling Parties thereafter accepted, subject to the negotiation of a stipulation of settlement.  The Settling Parties notified the Court that they had reached an agreement in principle to settle the action on January 31, 2024. ECF No. 73. The Court thereafter entered an order deeming the previously filed motion to dismiss as withdrawn without prejudice to reinstatement. ECF No. 74.

### d.  Plaintiffs and Lead Counsel Finalized the Stipulation, Sought and Obtained Preliminary Approval of the Proposed Settlement

33.     Following their agreement to settle in principle, the Parties negotiated formal settlement documentation, including the Stipulation, Class and Summary Notices, and proposed orders, which were filed with the Court in connection with Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement on April 3, 2024. ECF Nos. 83-1.

34.     Pursuant to the Court's July 2, 2024 Preliminary Approval Order, in which the Court granted preliminary approval of the proposed Settlement and appointed Court-appointed Claims Administrator, Paul R. Hage, acting in his capacity as the Plan Administrator for the Voyager Wind Down Debtor ("Claims Administrator"), as the Claims Administrator. The Claims Administrator carried out the approved notice program. The Notice program generated significant Class Member inquiry to Lead Counsel at Scott+Scott, with over 90 separate investors inquiring. In response to the Class Member inquiries, Scott+Scott diligently tracked and responded to all inquiries, often multiple times, and will continue to do so.

35.     Finally, Lead Counsel has prepared and coordinated all the filings in support of the pending Final Approval Motion and will continue to assist Class Members with the Settlement should that Motion be approved.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND MERITS FINAL APPROVAL

### a.    The Proposed Settlement Comports with Other Settlements

36.     As noted above, after prosecuting this Action through the fully briefed motion to dismiss, the Parties reached a $6.5 million Settlement. This is a favorable result in light of the significant risks of continued litigation. The $6.5 million settlement amount is above the median securities class action settlement from 2014-2023 where, as here, individual investors served as lead plaintiffs. *See* Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements 2023 Review and Analysis at 13, CORNERSTONE RESEARCH (2024),

https://www.cornerstone.com/wp-content/uploads/2024/03/Securities-Class-Action-Settlements-2023-Review-and-Analysis.pdf ("Cornerstone Research"). The settlement amount is also above the median settlement for cases that settled in less than two years. *Id* at 14. Therefore, when

compared against other similarly situated securities actions, the proposed Settlement represents an above-average recovery.

37.    The result is also notable when viewed in light of the substantial risks that this Action and continued litigation entail (discussed below), which, absent the proposed Settlement, could readily result in a smaller recovery or no recovery at all.

      **b.  The Proposed Settlement Provides a Very Reasonable Recovery in Light of the Significant Litigations Risks faced by Plaintiffs and Lead Counsel**

38.    While Plaintiffs and Lead Counsel believe that the claims against Defendants have substantial merit, they also recognize that there are considerable risks involved in pursuing the Action through the completion of summary judgment, trial, and appeal.  It was important to Plaintiffs to quickly resolve the case on favorable terms, as it would allow Settlement Class Members to maximize their recovery of the Voyager's available insurance assets, and allow for the release of additional money to Class Members prior to those funds being reduced with further litigation.  *See* Plaintiff Declarations at ¶10.

39.    As noted above, nearly all elements of liability were vigorously disputed by Defendants and at the motion to dismiss stage, and had Defendants succeeded in convincing the Court to dismiss the case, the Settlement Class could have received nothing.

40.    Throughout litigation, Defendants consistently and vigorously asserted that Plaintiffs' claims were barred due to an arbitration clause in Voyager's Terms of Service.  While Plaintiffs believe that they presented compelling arguments and evidence that the arbitration clause did not apply to this action in their opposition briefing, there was a significant risk that the Court would have granted the Settling Defendants motion and sent the case to arbitration.  And, although Plaintiffs would have been able to pursue their claims in arbitration, it would have been unlikely that they would have been able to pursue claims on behalf of the Settlement Class members.

41.    Settling Defendants also argued in their motion to dismiss that Plaintiffs' claims under the Securities Act of 1933 were barred by the statute of limitations and/or statute of repose. Settling Defendants argued that the Earn Accounts and the VGX tokens were offered more than three years before the institution of the case such that the claims were barred by the statute of repose. Further, Settling Defendants argued that Plaintiffs had signed up for their Earn Accounts more than one year prior to the filing of the case, such that the 1933 Act claims were barred by the statute of limitations. Again, while Plaintiffs presented significant argument and evidence that they believe demonstrated the timeliness of the 1933 Act claims asserted, there remained a substantial risk that the Court could have dismissed all or a portion of the 1933 Act claims on timeliness grounds.

42.    Further, Settling Defendants argued that the claims pursuant to the Securities Act of 1933 should be dismissed because they were not "statutory sellers" of any securities to any Plaintiff. Because the Plaintiffs made their purchases on the Voyager platform, Settling Defendants alleged that they could not be held liable because they themselves did not pass title to Plaintiffs nor successfully solicit such purchases. Although Plaintiffs responded in detail to Settling Defendants' arguments, Plaintiffs acknowledge that the legal treatment of cryptocurrencies and digital assets is a developing area of law and there was a risk that the Court would side with Settling Defendants' interpretation of the governing caselaw.

43.    The Settling Defendants also sought dismissal of Plaintiffs' claims for: (i) failure to allege scheme liability; (ii) failure to adequately allege a fraudulent misrepresentation or omission; (iii) failure to plead a strong inference of scienter; (iv) failure to plead reliance; (iv) failure to plead loss causation; and (v) failure to state control person claims. Defendants also sought dismissal of Plaintiffs' state law securities claims.

44.     While Plaintiffs and Lead Counsel have substantial responses to Defendants' arguments, a successful outcome was not guaranteed, and for many disputed issues, resolving the Parties' disputes would likely have come down to an unpredictable and hotly disputed "battle of the experts."  However, had Settling Defendants prevailed on any of these arguments, it would have dramatically reduced or eliminated recoverable damages. This uncertainty also militates strongly in favor of approving the Settlement.

45.     Even if the Court denied every aspect of Defendants' motion to dismiss or compel arbitration, Plaintiffs faced similar risks that Defendants' arguments would have been accepted at the class certification, summary judgment, or at trial.  Each remaining case milestone presented Plaintiffs and Lead Counsel with multiple risks, including that the finder of fact would agree with Settling Defendants and that damages would be substantially lower than the Settlement Amount – or even zero.

46.     Finally, even if Plaintiffs and Lead Counsel overcame all of the foregoing risks before this Court and at trial, if the Parties' litigation experience in this hard-fought case is any guide, it is extremely likely that Defendants would then file post-verdict motions, followed by further appeals on all of these issues. This not only increases the overall litigation risk, but also highlights the extent to which, absent a settlement, litigating this case to finality would have required the Settlement Class to potentially wait additional years and undertake additional expense before being able to collect any recovery. By comparison, the proposed Settlement represents a favorable recovery, as well as a certain and immediate one.

47.     Finally, Plaintiffs faced substantial risks that, if the Action proceeded to trial, they would not be able to recover any substantial judgment if obtained because the Settling Defendants had limited personal assets to satisfy any such judgment, and the insurance funds were a wasting

asset that had been diminished (and would continue to be rapidly depleted) by costs of defending numerous related actions brought following Voyager's collapse as well as claims asserted in the related Voyager bankruptcy.

## IV.    THE PLAN OF ALLOCATION IS CUSTOMARY, FAIR, AND REASONABLE

48.    The Plan of Allocation will govern how Class Members' distributions will be calculated and, ultimately, how money will flow to them.  The proposed Plan of Allocation in this Action was developed by Plaintiffs in consultation with the Plan Administrator and provides a fair and reasonable method to allocate the Net Settlement Fund among class members.  Pursuant to the Plan of Allocation, the Claims Administrator will distribute the Net Settlement Fund (minus approximately $30,000 that will not be paid to Class Members due to the particular distribution requirements of the Voyager Plan) to members of the Settlement Class consistent with the terms set forth in the Plan Document, Art. III.C.3 and Art. VI, and the Plan Administrator Agreement. Under those terms, Class Members shall be entitled to a distribution such that each member of the Settlement Class will receive its share of the Net Settlement Fund (valued in U.S. dollars) on a *pro rata* basis (the "Plan of Allocation").  This *pro rata* distribution is calculated per the Plan, based on the value of the Class Member's allowed bankruptcy claim.  Accordingly, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of this Settlement among the Settlement Class.

49.    For these reasons, it is respectfully submitted that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. Moreover, as noted above, the Notice contained a description of the Plan of Allocation and advised Settlement Class Members of their right to object to the proposed plan, and, to date, no objections to the proposed Plan of Allocation have been received.

## V.    LEAD COUNSEL'S FEE APPLICATION IS REASONABLE

50.    Lead Counsel respectfully requests an attorneys' fee award of 20% of the Settlement, or $1.3 million.  The request is consistent with the noticed amount, the excellent result achieved, the complex and extensive work performed, and is fully supported by Plaintiffs, who are sophisticated individual investors. As further detailed in the accompanying Fee and Expense Motion, an award of 20% of the Settlement amount is commonly granted by New York federal courts, and other courts throughout the country, in similar securities cases.

51.    As further detailed in the accompanying Fee and Expense Motion, the fee request satisfies all of the factors that courts commonly consider when assessing such requests.

### a.    The Result Achieved

52.    The result achieved is an important factor to be considered in making a fee award. Here, the Settlement Amount of $6,500,000 is a very favorable recovery both from the perspective of other securities class actions in this Circuit and in light of the significant risks that continued litigation entails.

53.    The significance of the Settlement is also demonstrated by the numerous obstacles that Lead Counsel overcame in order to achieve it, including Defendants' attempts to dismiss the case, the complexity of the claims, and the considerable risks and costs that the litigation already entailed. *See supra* §§II., III.b; Final Approval Motion §II.E.

### b.    Time, Labor, and Fee Percentage Requested

54.    Over the course of litigating the Action to the point of the Settlement, Lead Counsel's vigorous prosecution included such numerous tasks as: (a) conducting an extensive factual investigation of the events underlying Voyager's rise and subsequent bankruptcy; (b) reviewing and analyzing the representations made by the Voyager in filings with the Canadian

Securities Exchange and other official filings; (c) reviewing and analyzing industry reports and comprehensive news reports, press releases and other media files concerning Voyager; (d) collecting and thoroughly reviewing transcripts of press conferences and analyst conference calls regarding Voyager; (e) thoroughly reviewing publicly-filed documents in *In re: Voyager Digital Holdings, Inc.,* Case No. 22-10943-MEW (Bankr. S.D.N.Y.); (f) reviewing filings and adversarial complaints regarding Voyager in related bankruptcies[2]; (g), reviewing complaints and filings in regulatory actions and investigations brought concerning Voyager[3]; (h) preparing and filing the initial complaint filed in this matter; (i) filing papers in support of Lead Plaintiffs' PSLRA appointment motion; (j) filing a detailed consolidated complaint and then a subsequent detailed amended complaint; (k) defending against Defendants' motions to dismiss; (l) engaging in extensive settlement negotiations with Settling Defendants' counsel and the mediator; and (m) formalizing the settlement and presenting it to the Court for approval. Since preliminary approval was granted, Lead Counsel has spent significant time in responding to numerous Class Member inquiries and in preparing the instant papers in support of Final Approval.

55.    While Lead Counsel makes this fee request based on a percentage-of-recovery methodology, using the lodestar approach as a cross-check further establishes the reasonableness of the requested fee. *See* Fee and Expense Motion §III.2. In total, Lead Counsel and their paraprofessionals expended over 1,603.65 hours prosecuting the Action through the filing of these papers, which resulted in a lodestar of $1,524,588.25. Declaration of Daryl F. Scott on Behalf of Scott+Scott Attorneys at Law LLP in Support of Application for Award of Attorneys' Fees and

---

[2] These related actions include *In re Alameda Research LLC.,* Case No. 22-11066 (D. Del.); *In re Three Arrows Capital, Ltd.,* Case No. 22-10920; (S.D.N.Y.)*; and In re Celsius Network LLC,* Case No. 22-10964; (S.D.N.Y.).

[3] These actions include *Commodities Futures Trading Commission v. Stephen Ehrlich,* Case No. 1:23-cv-8962 (S.D.N.Y.); *Federal Trade Commission v. Voyager Digital, LLC et al.,* Case No. 1:23-cv-08960; state regulator proceedings; as well as investigations by the Federal Deposit Insurance Corporation and the Board of Governors of the Federal Reserve System.

Expenses ("Scott+Scott Declaration"), ¶4. *See* Ex. 2; Declaration of James Taylor-Copeland. The requested fee of 20%, or $1,300,000, represents a "negative" multiplier of approximately 0.85. That is, the requested fee would award Lead Counsel less than the lodestar they expended in hard-fought litigation securing the proposed Settlement for the Class.

### c. The Risk, Magnitude, and Complexity of the Litigation

56.     The Action involved complex issues of law and fact that presented considerable obstacles to prevailing on the claims. As noted above (at §III.b) and in the accompanying Memoranda, this Action was subject to substantial risks, including arbitration, liability, causation, and damages. Given these and other risks, along with Defendants' commitment to advocating their position and the complexity of the claims, a favorable resolution was never assured in this Action, and certainly not a quick or substantial one.

57.     When Lead Counsel undertook this representation, there was no assurance that the Action would survive the pending motion to dismiss or compel arbitration and future contentious briefing on class certification, and then summary judgment, trial, and/or any appeals. There was no assurance that Lead Counsel would recover any payment whatsoever for its services.

58.     Lead Counsel prosecuted this Action on a contingent-fee basis, assuming a significant risk that the Action would not result in any recovery and that it would not receive any compensation. To date, Lead Counsel has not been compensated for any time or expense since the Action's inception.

59.     Therefore, the contingent nature of Lead Counsel's representation, especially under the foregoing circumstances, supports the percentage fee requested. It is also notable that, unlike many class actions where risk is spread and expenses are shared by several firms working on a

case, Scott+Scott investigated, filed, and prosecuted this case entirely by itself, and bore the entire risk of non-payment by itself.

### d. Quality of the Representation

60.    Lead Counsel worked diligently to obtain an exceptional result for the Class. From the outset, Lead Counsel devoted significant time and resources to researching and investigating the facts to support a pleading that they believed could survive a motion to dismiss and obtain class certification.    Lead Counsel also spent significant time navigating this Action through an overlapping mediation with Voyager's bankruptcy.    The issues overlapping this Action and potential actions brought in the bankruptcy were complex, and Lead Counsel's success in litigating this case to the Settlement speaks to its quality of representation.

61.    As noted above and in the Firm Resume, attached as Ex. C to the Scott+Scott Declaration, Lead Counsel has extensive and significant experience in the highly specialized field of securities class action litigation. This experience was evident in the diligent and rigorous work undertaken by Lead Counsel in prosecuting this Action and arriving at the proposed Settlement in the face of Defendants' strong opposition and the many hurdles to success.

62.    The quality of work performed by Lead Counsel in attaining the proposed Settlement should also be evaluated in light of the quality of the opposition. Defendants were represented by skillful and experienced counsel, Day Pitney LLP and Calfee, Halter & Griswold LLP, two large, well-regarded law firms with impressive track records.    Defense Counsel presented a thorough and thoughtful defense and challenged Lead Counsel at every turn in the Action.    In the face of such knowledgeable and experienced opposition, Lead Counsel were able to develop a case that was sufficiently strong to persuade Defendants to settle the case for an amount that Lead Counsel believes is highly favorable to the Class.

###### e. Plaintiffs' Informed Consent to the Fee Request

63.    Lead Counsel's fee and expense request has the full support of Plaintiffs, who are sophisticated individual investors.  *See* Plaintiff Declarations ¶13.  When Plaintiffs retained Lead Counsel to prosecute the Action, both Plaintiffs and Lead Counsel understood that Lead Counsel would be compensated on a purely contingent basis and would only be paid if successful, subject to Court approval. Plaintiffs support the request for a fee award as fair and reasonable, in light of the favorable result achieved, and substantial effort necessary to achieve it.  *Id.*

## VI.    LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY LITIGATION EXPENSES IS REASONABLE

64.    Lead Counsel also requests payment of expenses incurred in connection with the prosecution of this Action in the amount of $39,150, which they incurred on behalf of the Class. See Scott+Scott Declaration ¶5 and Ex. B to the Scott+Scott Declaration.  This amount is below the $40,000 maximum expense amount that the Settlement Class was advised could be requested in the Notice.  Lead Counsel has not received any reimbursement for these expenses to date. Again, Plaintiffs support this request. *See* Plaintiff Declarations ¶¶12-13.

65.    From the beginning of this Action, Lead Counsel was aware that it might not recover any of its expenses and, at the very least, would not recover anything until this Action was successfully resolved. Lead Counsel closely managed its expenses throughout the Action, including negotiating strict fee caps with its expert consultants, while always ensuring they took all steps necessary to aggressively prosecute Plaintiffs' claims.

66.    The requested expenses reflect typical expenditures incurred in the course of litigation.

67.    For example, of the total amount of expenses, $18,812.50, or approximately 48%, was spent on experts and consultants.  To that point, on behalf of Plaintiffs, Lead Counsel retained

a consulting damages expert to assist in preparing for mediation.  In addition, $12,500 or approximately 32%, was expended in connection with the mediation.

68.     Lead Counsel also seeks reimbursement in the amount $1,500 for its case-related travel costs, including round-trip air to and from the Final Approval hearing for a California-based attorney.

69.     The other expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. The expenses include filing and service of process fees, online legal and factual research fees, mailing and delivery fees, and printing and duplicating fees.

70.     As set forth in the Scott+Scott Declaration, these expenses are reflected in the books and records of Lead Counsel, which are accurately prepared from invoices and similar materials.

71.     Accordingly, as these expenses were reasonably necessary to the prosecution of the Action, Lead Counsel respectfully submits that they merit reimbursement. Additionally, Plaintiffs support these requests as well.  *See* Plaintiff Declarations, ¶13.

## VII.     PLAINTIFFS' REQUESTED AWARD IS FAIR AND REASONABLE

72.     Plaintiffs request an aggregate award for the time and expenses they incurred prosecuting the Action on behalf of the Settlement Class in the amount of $60,000, or $10,000 each.

73.      As discussed in the Plaintiff Declarations, Plaintiffs have diligently fulfilled their obligations to the Settlement Class since the Action's inception, having each: (i) researched and followed news regarding Voyager; (ii) contracted counsel, specifically specialist crypto and securities class action firms of Lead Counsel to discuss the basis of possible claims; (iii) reviewed and approved complaints and other filings; (iii) communicated regularly with Lead Counsel

telephonically and via email regarding the status of the Action; (iv) collected and transmitted transaction records and other documents related to Voyager investments and the Voyager bankruptcy to my counsel; (v) stayed current with developments in the Voyager bankruptcy case; (vi) consulted with counsel regarding the possibility of mediation, settlement objectives, and potential settlement terms; and (vii) engaged in various settlement-related discussions and related conversations about the "mediator's proposal" that forms the basis of the proposed Settlement. Plaintiff Declarations at ¶8.

74.     In total, Plaintiffs estimate that they spent a collective 415 hours in prosecuting this action.  These efforts required Plaintiffs to dedicate time and resources to this Action that they would have otherwise devoted to their primary careers and businesses.

75.     The Notice informed potential Settlement Class Members of Plaintiffs' intent to request reimbursement for their time and expenses prosecuting this Action of up to an aggregate of $60,000.  The efforts expended by Plaintiffs during the course of this Action are precisely the types of activities courts have found merit reimbursement, and the amount sought is fair and reasonable.  Such requests have been granted in similar cases and are supportive of the broad public policy that encourages investors to take an active role in commencing and supervising private securities litigation.

## VIII.  THE REACTION OF THE CLASS TO DATE SUPPORTS FINAL APPROVAL, LEAD COUNSEL'S FEE AND EXPENSE APPLICATION, AND THE PROPOSED SERVICE AWARD FOR PLAINTIFFS

76.     The Court-ordered notice program, described above, informed Class Members of the proposed Settlement's material terms, the Plan of Allocation, the potential amounts of fees and reimbursement that Lead Counsel would seek, the potential aggregate award Plaintiffs would seek,

and of the time and manner by which they could object to any of the above or exclude themselves from the Settlement Class altogether.

77.     As set forth in the Certificate of Service filed on August 20, 2024 (ECF NO. 95), the Claims Administrator sent the Notice packet (consisting of the Preliminary Approval Order, the Notice, and the Stipulation of Settlement) via electronic mail on all potential Class Members via their last known-email address.  These documents were also published, on or before July 18, 2024, on the Voyager creditor website: www.investvoyager.com.  Finally, on July 22, 2024, the Claims Administrator caused the Summary Notice of Proposed Settlement of Class Action to be published on the online Cryptocurrency media outlet Coindesk. The Claims Administrator attempted to publish such notice with four other crypto media outlets, but such outlets (including CoinTelegraph and The Block) declined to post the notice or were non-responsive to his repeated requests.

78.     It is respectfully submitted that the Claims Administrator's notice efforts were robust and extensive.  Further evidence of the success of the Notice program is the fact that with over 90 different class members reaching out to Lead Counsel in connection with the Settlement and Notice.  In response to these class member inquiries, Scott+Scott diligently tracked and responded to all inquiries, often multiple times, and will continue to do so.

79.     The deadline for submitting objections or exclusions is September 17, 2024

80.     Although that deadline has not yet passed, as of the date of this Declaration, Lead Counsel and the Claims Administrator have not received any Class Members objections to the Settlement Class.  Additionally, even though Class Members were instructed to file any objections they may have by the foregoing deadline, to date, no potential Class Member has submitted any objection.

81.     This reaction of the Class indicates support for, and the reasonableness of, finally approving the settlement and approving the fee and expense requests.

**IX.    CONCLUSION**

82.     In light of the significant recovery to the Settlement Class and the substantial risks of continued litigation, as described above and in the accompanying Memoranda, Lead Counsel respectfully submits that the proposed Settlement and Plan of Allocation should be approved as fair, reasonable, and adequate.

83.     For the same reasons, and in light of the substantial work performed, Lead Counsel respectfully submits that the Court should award attorneys' fees in the amount of 20% of the Settlement, plus $39,150 in expenses.

84.     Similarly, Plaintiffs respectfully submit that the Court should grant their aggregate request for $60,000 in reimbursement for the time and expenses they incurred representing the Settlement Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New York, New York on August 27, 2024.


                                             *s/ Sean T. Masson*
                                             Sean T. Masson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

*s/ Sean T. Masson*
Sean T. Masson
